**WAUSAU BUSINESS INSURANCE CO., a Wisconsin corporation,**
**Plaintiff,**

v.

**US MOTELS MANAGEMENT, INC., d/b/a Dillon Super 8, a Colorado corporation, Defendant.**

**No. 03–RB–1077 OES.**

United States District Court,
D. Colorado.

Sept. 10, 2004.

Carlos Leal, Yates & Leal, LLP, Denver, CO, for Plaintiff.

## ORDER

BLACKBURN, District Judge.

The matters before me are (1) Defendant's Motion for Partial Summary Judgment [# 14], filed February 20, 2004; and (2) Plaintiff's Cross–Motion for Summary Judgment [# 20], filed March 16, 2004. I have jurisdiction over this insurance contract coverage dispute under 28 U.S.C. § 1332(a) (diversity of citizenship). I deny defendant's motion and grant plaintiff's motion.

## I. FACTUAL BACKGROUND

Defendant Dillon Hospitality, Inc. d/b/a Dillon Super 8 [1] held two commercial crime insurance policies issued by plaintiff Wausau Business Insurance Company, one covering the period from August 1, 2000, through August 1, 2001, and the other for the period from August 1, 2001, through August 1, 2002. (See Plf. Am. Compl. at 2, ¶ 5; Def. Mot.App., Exhs D & E.) Both policies provide that plaintiff "will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss." (Def. Mot.App., Exh. D, Employee Dishonesty Coverage Form (CR 00 01 10 90), ¶ A.) [2] "Covered Property" as defined by the policy includes "money." (Id.) "Covered Cause of Loss" means "Employee dishonesty," which is further defined as

dishonest acts committed by an "employee," whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

---

1. The defendant is misidentified in the caption of the case as U.S. Motels Management, Inc. d/b/a Dillon Super 8. (See Def. Ans., Countercl. and Jury Demand at 1.)

2. Because the parties agree that the pertinent provisions of both policies are identical, the court will refer only to the 2000–2001 policy for ease of reference.

(1) Cause you to sustain loss; and also

(2) Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:

(a) The "employee"; or

(b) Any person or organization intended by the "employee" to receive that benefit.

(*Id.*, ¶¶ A(2) & D(3)(a).) The limit of liability is $100,000 for any one "occurrence." (*Id.*, ¶ B & Exh. E, Commercial Crime Coverage Part Declaration.) "Occurrence" is defined as "all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts." (Def. Mot.App., Exh. D, Employee Dishonesty Coverage Form (CR 00 01 10 90), ¶ D(3)(b).)

In June 2002, defendant discovered that one of its employees had been embezzling money from the company since at least 1998. The employee's theft had included a fairly broad repertoire of tactics, including manipulating the company's refund and fax/copy accounts, booking paid rooms as "comps," allowing two customers to live in the motel for a period of months for a fee, which she kept for herself, and stealing daily cash deposits and ski lift ticket sales. (*Id.*, Exh. F at 2–3, ¶ 2.) Defendant immediately submitted insurance claims to plaintiff to recover these losses, which it estimated at $324,834.69. (*Id.*, Exh. F at 2, ¶ 5 & Exh. F–3.) Plaintiff ultimately determined that the employee's dishonest acts constituted a single "occurrence" within the meaning of the policy and that "[a]s such, you have $100,000 in coverage for all losses by this employee that occurred on or after 08/01/2000." (*Id.*, Exh. F–5.) Defendant tendered that amount to plaintiff. (Plf. Am Compl. at 3, ¶ 10.) It then filed a declaratory judgment action in

this court seeking a declaration that it had thereby satisfied its obligations under the insurance policy. Defendant answered and filed counterclaims for breach of contract, bad faith, and unfair and deceptive trade practices under the Colorado Consumer Protection Act.

The parties now have filed cross-motions for summary judgment. Defendant seeks partial summary judgment on the coverage issue. Plaintiff seeks summary judgment as to the coverage issue, as well as to plaintiff's bad faith counterclaim. The parties have briefed the issues and presented evidence in support of their respective positions. These matters are now ripe for determination.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir.1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A movant who does not have the burden of proof at trial must show the absence of a genuine fact issue. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994), *cert. denied*, 514 U.S. 1004, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995). By contrast, a movant who bears the burden of proof must submit evidence

to establish every essential element of its claim or affirmative defense. *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation,* 209 F.Supp.2d 1106, 1111 (D.Colo.2002). In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works,* 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services,* 165 F.3d 1321, 1326 (10th Cir.), *cert. denied,* 528 U.S. 815, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States,* 166 F.3d 1088, 1092 (10th Cir.), *cert. denied,* 528 U.S. 933, 120 S.Ct. 334, 145 L.Ed.2d 260 (1999); *Nutting v. RAM Southwest, Inc.,* 106 F.Supp.2d 1121, 1123 (D.Colo.2000).

## III. LEGAL ANALYSIS

Under Colorado law, an insurance policy is a contract and is interpreted accordingly. *Union Insurance Co. v. Houtz,* 883 P.2d 1057, 1061 (Colo.1994); *Chacon v. American Family Mutual Insurance Co.,* 788 P.2d 748, 750 (Colo.1990). The primary goal is to effectuate the intent of the parties. *Houtz,* 883 P.2d at 1061; *Simon v. Shelter General Insurance Co.,* 842 P.2d 236, 239 (Colo.1992). To accomplish this objective, the terms of the policy are given their plain and ordinary meanings unless the policy itself indicates that the parties intended otherwise. *Bohrer v. Church Mutual Insurance Co.,* 965 P.2d 1258, 1261–62 (Colo.1998); *Chacon,* 788 P.2d at 750. The provisions of the policy must be construed together as a whole, not in isolation. *Simon,* 842 P.2d at 239.

Policy provisions that are clear and unambiguous should be enforced as written. *Chacon,* 788 P.2d at 750; *Kane v. Royal Insurance Co. of America,* 768 P.2d 678, 680 (Colo.1989). That the parties differ as to the proper interpretation of the policy does not make it ambiguous. *Houtz,* 883 P.2d at 1061; *Kane,* 768 P.2d at 680. Rather, a policy provision is ambiguous only if it is susceptible to more than one reasonable interpretation. *Houtz,* 883 P.2d at 1061; *Allstate Insurance Co. v. Juniel,* 931 P.2d 511, 513 (Colo. App.1996). A policy provision that is truly ambiguous under this standard should be construed against the insurer and in favor of coverage. *Bohrer,* 965 P.2d at 1262; *Houtz,* 883 P.2d at 1061.

## A. DEFINITION OF "OCCURRENCE"

As noted above, the insurance policies define "occurrence" as "all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts." (Def. Mot.App., Exh. D, Employee Dishonesty Coverage Form (CR 00 01 10 90), ¶ D(3)(b).) Focusing on the notion that a "series of acts" implies relatedness, defendant maintains that its dishonest employee's various embezzlement ploys were separate and distinct occurrences because each involved a different modality and occurred in a different, albeit overlapping, time frame.

The court cannot agree. The Tenth Circuit has held that " 'an occurrence is determined by the cause or causes of the resulting injury.' " *Business Interiors, Inc. v. Aetna Casualty and Surety Co.,* 751 F.2d 361, 363 (10th Cir.1984) (quoting *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.,* 676 F.2d 56, 61 (3rd Cir. 1982)). Under this standard, the question is not whether the employee's various methods of embezzling were related, as defendant suggests, but whether the cause

of the loss was related. The cause of defendant's loss was the dishonesty of one employee. Although the employee appears to have been particularly creative in finding ways to bilk defendant, her intent throughout undoubtedly was the same: to steal defendant's money. *See id.; see also Scirex Corp. v. Federal Insurance Co.,* 313 F.3d 841, 851–52 (3rd Cir.2002); *Christ Lutheran Church v. State Farm Fire and Casualty Co.,* 122 N.C.App. 614, 471 S.E.2d 124, 125–26 (1996), *aff'd,* 344 N.C. 732, 477 S.E.2d 33 (N.C.1996); *Jefferson Parish Clerk of Court Health Insurance Trust Fund v. Mouledoux,* 673 So.2d 1238, 1244–45 (La.App.1996, writ denied).

The court finds nothing ambiguous in this definition. It therefore declines defendant's invitation to construe this term against plaintiff. *See Juniel,* 931 P.2d at 515–16 ("The rule that 'contracts of insurance are to be strictly construed in favor of the insured . . . applies only when there is, in fact, a need to construe the contract.' . . . 'courts will not force an ambiguity in order to resolve it against an insurer.'") (citations omitted). Accordingly, the court concludes that plaintiff did not breach the contract of insurance by construing defendant's dishonest employee's embezzlement scheme as a single occurrence.

## B. NON–CUMULATION PROVISION

■ Defendant next argues that even if the embezzlement scheme constituted a single occurrence, because that occurrence spanned more than one policy period, coverage was triggered under each policy. Plaintiff counters that such a construction is barred by the non-cumulation provision of the policy, which provides:

11. Loss Covered Under This Insurance and Prior Insurance Issued By Us or Any Affiliate:

If any loss is covered:

a. Partly by this insurance; and

b. Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

c. Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

(Def. Mot.App., Exh. D, Crime General Provisions (Loss Sustained Form) (CR 10 00 04 97) at 3–4, ¶ 11.)

The intent of this provision could not be clearer. As to any loss extending beyond the policy period, the most plaintiff agreed to pay was "the larger of the amount recoverable under this insurance or the prior insurance," in this case, the policy limits of $100,000 per occurrence. *See Diamond Transportation System, Inc. v. Travelers Indemnity Co.,* 817 F.Supp. 710, 712 (N.D.Ill.1993); *Reliance Insurance Co. v. Treasure Coast Travel Agency, Inc.,* 660 So.2d 1136, 1137–38 (Fla.App.1995). Most of the cases on which defendant relies included only the language of paragraph 11(c) above, and not the explicit limitation of the preceding subsections. *See, e.g., Cincinnati Insurance Co. v. Hopkins Sporting Goods, Inc.,* 522 N.W.2d 837, 839 (Iowa 1994) (interpreting policy language providing only that coverage would not be cumulative from year-to-year or period-to-period); *Penalosa Cooperative Exchange v. Farmland Mutual Insurance Co.,* 14 Kan.App.2d 321, 789 P.2d 1196, 1200 (1990) (same). *See also Treasure Coast Travel Agency,* 660 So.2d at 1137–38 (noting policies construed in earlier cases did not include above-cited language, by which "this insurer has accomplished what insurers with non-cumulative provisions alone apparently intended").[3] The court therefore

---

3. The Fourth Circuit has adopted the position

defendant advocates in an unpublished deci-

concludes that plaintiff did not breach its obligations under the policy by tendering the limits of only one policy.

## C. PRE–COVERAGE LOSSES

█ In 1999–2000, defendant was covered by an insurance policy issued by Fireman's Fund Insurance Company similar to the policies it later purchased through plaintiff. Because part of the embezzlement scheme occurred during the period of this policy's coverage, but was not discovered until after the policy had lapsed,[4] defendant claims plaintiff is liable for losses in this time frame as well. It relies on the following language of the policy:

10. Loss Sustained During Prior Insurance

a. If you, or any predecessor in interest, sustained loss during the period of prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

(1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

(2) This loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

(Def. Mot.App., Exh. D, Crime General Provisions (Loss Sustained Form) (CR 10 00 04 97) at 3, ¶ 10(a).)

Were this the extent of the policy provision, defendant's argument might have merit. However, defendant neglects to cite the provision in its entirety, which includes the following limitation:

b. The insurance provided under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

(1) This insurance as of its effective date; or

(2) The prior insurance had it remained in effect.

(*Id.* at 3, ¶ 10(b)). Plaintiff has already tendered defendant $100,000 under its policy, twice the $50,000 limit of liability under the Fireman's Fund policy. The clear language of the policy demonstrates that defendant received all it was entitled to thereunder.

## D. BAD FAITH CLAIMS

█ Finally, plaintiff seeks summary judgment as to defendant's counterclaim for bad faith breach of the insurance contract.[5] To make out this claim, defendant must establish that plaintiff's conduct was unreasonable and that plaintiff either knew or recklessly disregarded the fact that its conduct was unreasonable. *Southwest Nurseries, LLC v. Florists Mutual Insurance, Inc.*, 266 F.Supp.2d 1253, 1256 (D.Colo.2003); *Ballow v. PHICO Insur-*

---

sion, finding the above-cited language ambiguous because courts in different jurisdictions have come to divergent conclusions as to its import. *See Spartan Iron & Metal Corp. v. Liberty Insurance Corp.*, 6 Fed.Appx. 176, 179, 2001 WL 301111 at *3 (4th Cir. Mar.28, 2001). Because under Colorado law, ambiguity cannot be evaluated at this level of abstraction, *see Juniel*, 931 P.2d at 514, this court respectfully declines to adopt the Fourth Circuit's reasoning.

4. The Fireman's Fund policy provided that the insurer "will pay only for covered loss discovered no later than 1 year from the end of the Policy Period." (Def. Mot.App., Exh. C at 2, ¶ B–5.)

5. Plaintiff has not sought summary judgment as to defendant's counterclaim under the Colorado Consumer Protection Act, §§ 6–1–101—6–1–908, C.R.S., (*see* Def. Ans., Countercl. and Jury Demand at 13–14, ¶¶ 61–64), and the court therefore does not address that claim.

*ance Co.,* 875 P.2d 1354, 1363 (Colo.1993). It is not unreasonable to deny coverage when the policy clearly supports that determination. *See Southwest Nurseries,* 266 F.Supp.2d at 1257 (not unreasonable for insurer to challenge claims that are fairly debatable) (citing *Pham v. State Farm Mutual Automobile Insurance Co.,* 70 P.3d 567, 572 (Colo.App.2003)).

 Moreover, the court finds the alleged delay in paying the benefits that were determined to be due was not unreasonable as a matter of law. Defendant submitted its claim under the policy on June 10, 2002, and plaintiff acknowledged receipt thereof on July 16 and requested supporting documentation. (Def. Mot. App., Exh. F at 2–3, ¶¶ 5–6.) Defendant provided such information on August 21. (*Id.,* Exh. F at 3, ¶ 7.) On September 11, only four months after first receiving notice of the claim, plaintiff relayed its determination that defendant was entitled to $100,000 under both policies. (*Id.,* Exh. F at 3, ¶ 9 & Exh. F–5.) The delay between that time and plaintiff's tendering of the policy limits was occasioned largely by defendant's attempts to convince plaintiff to reconsider its determination in light of the legal authorities now cited in defendant's summary judgment motion. (*See* Def. Ans., Countercl. and Jury Demand at 7–10, ¶¶ 19–39.) Plaintiff's lengthy and detailed response to these arguments shows that its delay in responding to defendant's queries was not unreasonable. (*See* Def. Mot.App., Exh. J.)

**THEREFORE, IT IS ORDERED** as follows:

(1) That Defendant's Motion for Partial Summary Judgment [# 14], filed February 20, 2004, is **DENIED**;

(2) That Plaintiff's Cross–Motion for Summary Judgment [# 20], filed March 16, 2004, is **GRANTED**;

(3) That defendant's counterclaims for breach of the insurance contract and bad faith are **DISMISSED WITH PREJUDICE**; and

(4) That plaintiff's request for a declaratory judgment that it has satisfied its obligations under the policy, that the August 2000–2001 policy is inapplicable to the loss sustained by defendant, and that plaintiff is not obligated to indemnify defendant for losses occurring in periods covered by other insurers is **GRANTED**.