REVISED APRIL 16, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 2, 2008

Charles R. Fulbruge III
Clerk

No. 06-60991

MADISON MATERIALS COMPANY INC

Plaintiff - Appellant

v.

ST PAUL FIRE & MARINE INSURANCE COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:04-CV-14

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

WIENER, Circuit Judge.

Plaintiff-Appellant Madison Materials Company, Inc. ("Madison") appeals the district court's grant of summary judgment in favor of its insurer, St. Paul Fire & Marine Insurance Company ("St. Paul"). Concluding that the losses suffered by Madison over a period of ten years constitute a single occurrence, we affirm.

## I. FACTS AND PROCEEDINGS

St. Paul and its predecessor, United States Fidelity and Guaranty Company ("USF&G"), issued an unbroken series of insurance contracts that together span the ten year period from January 26, 1992 to January 26, 2003.

The policies protected Madison from employee theft. In January 2003, Madison discovered that its financial officer, Vollie Neal Walker ("Walker"), had embezzled money from the company in each of the preceding ten years. Walker's scheme worked two ways: First, he opened fraudulent checking accounts in the names of two of Madison's suppliers and wrote checks from Madison that were deposited into the false accounts. Second, Walker began a payroll tax scheme in 2002 which resulted in his individual tax liability being paid by Madison. With the exception of $26,000 stolen through the payroll tax scheme, all of Walker's embezzlement was committed using the fraudulent checking accounts, which totaled $1,469,148.53.

Immediately after it learned of Walker's embezzlement, Madison notified St. Paul of the employee theft and submitted a sworn proof of loss for $1,469,148.53. St. Paul acknowledged receipt of the proof of loss and conducted an independent investigation into the theft, confirming Walker's embezzlement activities between 1992 and 2002. St. Paul concluded, however, that the most it owed Madison was $350,000, the limit of the insurance policy then in effect. St. Paul tendered that sum to Madison.

In November 2003, Madison sued St. Paul in Mississippi state court to recover the full amount of its loss. St. Paul removed the suit to the United States District Court for the Southern District of Mississippi. Subsequently, both parties filed motions for summary judgment. The district court ruled that Walker's embezzlement constituted a single "occurrence" and granted summary judgment in favor of St. Paul.

On appeal, Madison contends that Walker's myriad acts of theft over almost a decade constitutes more than a single occurrence because the scheme spanned multiple policy periods. We disagree. Our reading of the plain language of the policies convinces us that there was only one occurrence of employee dishonesty. We are not persuaded by Madison's argument that the

language of the policy is ambiguous or that Madison is entitled to recover in excess of the limit of the policy that was in effect at the time the loss was discovered.

## II. ANALYSIS

### 1. Standard of Review

We review a district court's grant of summary judgment de novo, applying the same standards as the district court.[1]  Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2]

### 2. Applicable Law

In a diversity case such as this, the substantive law of the forum state, here Mississippi, controls.[3]  Because this appeal involves an insurance contract between a nonresident and a resident of the forum state, we must look to Mississippi choice of law rules to determine the applicable law in this case.  As the contract was issued in Mississippi, we apply Mississippi law.[4]

### 3. Analysis

Under Mississippi law, construction of an insurance policy presents a question of law.[5]  "[I]f an insurance contract is plain and unambiguous, it should be construed as written."[6] However, "ambiguous terms in an insurance contract

---

[1] Dallas County Hosp. Dist. v. Assocs. Health & Welfare Plan, 293 F.3d 282, 285 (5th Cir. 2002).

[2] United States v. Corpus, 491 F.3d 205, 209 (5th Cir. 2007).

[3] See Erie R.R. Co. v Tompkins, 304 U.S. 64, 78 (1938).

[4] See Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003); Highlands Ins. Co. v. Allstate Ins. Co., 688 F.2d 398, 400 n.1 (5th Cir. 1982).

[5] Farmland Mut. Ins. Co. v. Scruggs, 886 So. 2d 714, 717 (Miss. 2004).

[6] Id.

are to be construed most strongly against the preparer, the insurance company."[7] The language of an insurance policy is ambiguous if "a reasonable person could have understood the terms to have more than one reasonable meaning."[8]

The dispute in this case turns on the meaning of "occurrence." Madison argues that the definition in the policy is ambiguous because it can be reasonably interpreted to exclude acts occurring outside of the policy period. According to Madison, this ambiguity entitles it to recover up to the policy limit for each of the ten successive policies issued by St. Paul or USF&G, given that some acts of embezzlement occurred and caused loss to Madison during the term of each policy. Again we perceive no ambiguity and reject Madison's proferred interpretation as unreasonable.

To determine St. Paul's liability under the contract, we start by interpreting the language of the policy itself. The policy in effect at the time that the loss was discovered states that "the most we will pay for loss in any one 'occurrence' is the applicable Limit of Insurance shown in the DECLARATIONS." Therefore, if Walker's prolonged embezzlement constitutes a single occurrence, the most that Madison may recover from St. Paul is one policy's limit, or $350,000. The policy defines occurrence as "an act or series of related acts involving one or more 'employees.'"[9] Mississippi courts have recognized that an "occurrence" is determined by the cause or causes of the resulting injury.[10] Walker repeatedly committed related acts of embezzlement throughout the decade of St. Paul's and USF&G's coverage, but there was only one cause of the injury sustained by Madison – Walker's dishonesty. As there

---

[7] U.S. Fid. & Guar. v. Omnibank, 812 So. 2d 196, 198 (Miss. 2002).

[8] Scruggs, 886 So. 2d at 718.

[9] Emphasis added.

[10] Universal Underwriters Ins. Co. v. Ford, 734 So. 2d 173, 177 (Miss. 1999).

was but a single cause of Madison's injury, and as the policy states that multiple related acts are to be treated as a single occurrence, there was only one occurrence of employee dishonesty over the ten year period.

Madison does not dispute that Walker's multiple acts of embezzlement during a single policy period constitute a single occurrence; however, Madison insists that there was a single occurrence of employee dishonesty in each policy period. Madison mistakenly relies on Universal Underwriters Insurance Co. v. Ford to support its argument that recovery is proper under each successive insurance policy. In Ford, an employee had embezzled money from a company on 175 different occasions over a four-year period.[11] The company was insured by Universal Underwriters, which had issued four consecutive one-year policies.[12] Each policy stated that Universal would cover "LOSS . . . resulting directly from any fraudulent or dishonest act committed by an EMPLOYEE."[13] The most that Universal would pay for employee dishonesty was $10,000 "as applicable to a LOSS caused by one or more EMPLOYEES, or to all LOSS caused by one EMPLOYEE or in which the EMPLOYEE is concerned or implicated."[14] Finding no language in the policy to indicate "that multiple acts or a series of related acts may be treated as one occurrence of loss,"[15] the Mississippi Supreme Court held that each occasion of embezzlement was a separate loss subject to the $10,000 policy limit.[16]

---

[11] Id. at 174.

[12] Id. A fifth insurance policy was issued by Underwriters after Ford discovered the loss.

[13] Id.

[14] Id at 174-75.

[15] Id. at 178 n.1.

[16] Id. at 178.

The St. Paul policy contains key language not present in Ford. It specifically states that multiple related acts may constitute a single occurrence. As the court noted in Ford, the insurer is only liable for one occurrence when policy language "clearly and unambiguously states that multiple acts may constitute [a single] occurrence of loss."[17] As the St. Paul policy unambiguously includes multiple related acts in the definition of a single occurrence, the holding in Ford does not control the outcome of this case.

Even though the definition of occurrence in the St. Paul policy expressly contemplates multiple acts constituting a single occurrence, Madison urges that the wording is nonetheless ambiguous because it fails to state expressly that an occurrence may span multiple policy periods. We disagree. Policy language is ambiguous only if it can be reasonably interpreted in more than one way.[18] As Walker's embezzlement scheme consisted of a "series of related acts involving one or more 'employees,'" it undisputably meets the policy definition of occurrence. Nowhere does policy language state or even imply that acts committed outside of the policy period in question cannot be part of a "related acts" occurrence within that policy period. We recognize that other circuits have found similar definitions of "occurrence" to be ambiguous,[19] but we are not persuaded that under Mississippi law, the definition of occurrence in this policy is ambiguous.

---

[17] Id. at 177 (citing Bus. Interiors, Inc. v. Aetna Cas. & Sur. Co., 751 F.2d 361 (10th Cir. 1984); Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co., 551 N.W.2d 224 (Minn. 1996)).

[18] Id. at 176.

[19] See Spartan Iron & Metal Corp. v. Liberty Ins. Corp., 6 F. App'x 176, 178 (4th Cir. 2001) (unpublished); Karen Kane Inc. v. Reliance Ins. Co., 202 F.3d 1180, 1187-88 (9th Cir. 2000); Glaser v. Hartford Cas. Ins. Co., 364 F. Supp. 2d 529, 538 (D. Md. 2005); A.B.S. Clothing Collection, Inc. v. Home Ins. Co., 34 Cal. App. 4th 1470, 1484-85, 41 Cal. Rptr. 2d 166, 174 (Cal. Ct. App. 1995). But see Bethany Christian Church v. Preferred Risk Mut. Ins. Co., 942 F. Supp. 330, 335-36 (S.D. Tex. 1996) (finding the definition of occurrence to be "clear and unambiguous").

Madison further argues that even if the definition of occurrence is not facially ambiguous, it becomes ambiguous when read in context with other provisions in the policy. Specifically, Madison contends that the language providing for recovery "only for loss you sustain through acts committed or events occurring during the policy period" indicates that an occurrence cannot span multiple policy periods. Madison misinterprets the effect of the clause in question: It only works to exclude coverage for losses occurring while St. Paul is not the insurer; it does not enlarge St. Paul's liability for a single occurrence.

Even if we were to assume arguendo that, as Madison suggests, there was some ambiguity surrounding the definition of occurrence, other language in the policy makes clear that Madison may recover only once for an occurrence even if the occurrence spans several policy periods. The section entitled "Loss Covered Under This Insurance and Prior Insurance Coverage Issued by Us or Any Affiliate" states that

> If any loss is covered:
>     a. Partly by this insurance; and
>     b. Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest; the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.
> Regardless of the number of years this insurance remains in force, or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

Additionally, the section entitled "Loss Sustained During Prior Insurance" provides that

> a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or any predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance. . .
> . . .

7

b.  The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:
    (1) This insurance as of its effective date; or
    (2) The prior insurance had it remained in effect.

Under these provisions, St. Paul is only liable for one policy's limit if a single occurrence spans multiple policy periods or is covered by a prior insurance policy.[20]  The only way that Madison could recover for losses incurred in a prior policy period would be if the losses incurred in the current policy period totaled less than the current policy's limit, and then only to the extent required to bring the insured's recovery up to the current policy's loss limit, here $350,000.

## III. CONCLUSION

We hold that all of Walker's related acts of embezzlement constituted only one occurrence of employee dishonesty.  Under the terms of the policy, Madison is entitled to recover no more than the $350,000 limit of the policy that was in effect when the theft was discovered.  The judgment of the district court is AFFIRMED.

---

[20] See Wausau Bus. Ins. Co. v. U.S. Motels Mgmt., Inc., 341 F. Supp. 2d 1180, 1184-85 (D. Colo. 2004); Diamond Transp. Sys., Inc. v. Travelers Indem. Co., 817 F. Supp. 710, 712 (N.D. Ill. 1993).