IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 7, 2017 Session

## TENNESSEE CLUTCH AND SUPPLY, INC. v. AUTO-OWNERS (MUTUAL) INSURANCE COMPANY

**Appeal from the Chancery Court for Davidson County**
**No. 16-0049-I      Claudia Bonnyman, Chancellor**

_____

### No. M2016-02195-COA-R3-CV

_____

This appeal arises from a dispute between an insured and its insurance carrier concerning the coverage limits under an "Employee Dishonesty" endorsement to a commercial general liability policy for an employee's dishonesty that spanned two policy years. After the insured discovered that one of its employees embezzled approximately $100,000 in 2014 and 2015, it filed a claim for $30,000, the aggregate of the policy limits of $15,000 for each policy year. The insurer took the position that the limitation of coverage for such an occurrence was $15,000, paid that amount, and denied the balance of the claim. The trial court held that the policy language was ambiguous and by construing the policies in favor of the insured, determined there were two policies, each of which provided $15,000 of coverage and ruled that Plaintiff was entitled to recover $30,000. The insurer appealed. Finding no ambiguity, we have determined that the 2015 policy was not a separate policy but a renewal of the 2014 policy, that the policy limit for employee dishonesty is $15,000 per occurrence, and that there was one continuous occurrence, as that term is defined in the policy, which spanned two years. We have also determined that the policy prohibits "stacking" of coverage from one policy year to the next. For these reasons, we respectfully reverse the judgment of the trial court and hold that the policy limits for the claim asserted by the insured is $15,000.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

John J. Griffin, Jr. and Michael A. Johnson, Nashville, Tennessee, for the appellant, Auto-Owners (Mutual) Insurance Company.

Fred C. Dance, Franklin, Tennessee, for the appellee, Tennessee Clutch and Supply, Inc.

## OPINION

Auto-Owners (Mutual) Insurance Co. ("Auto-Owners") provided commercial liability insurance for Tennessee Clutch and Supply, Inc. ("Plaintiff") in 2014 and 2015. The coverage was provided under two policies with effective dates from February 1, 2014, until February 1, 2015 ("the 2014 policy"), and from February 1, 2015, until February 1, 2016 ("the 2015 policy"). Each policy provided coverage for loss resulting from "employee dishonesty."

In July of 2015, Plaintiff discovered that an employee had embezzled $48,206.59 during the 2014 policy period and $50,384.51 during the 2015 policy period. Plaintiff timely made a claim for $30,000, which constituted policy limits per occurrence of $15,000 for two separate occurrences, one under each policy period. Auto-Owners responded to the claim stating the policy limits for the loss claimed was $15,000. Plaintiff then filed suit against Auto-Owners for breach of contract. During the pendency of this action, Auto-Owners interpleaded $15,000, which represents the policy limits for one occurrence.

After entering into a joint stipulation of the material facts, the parties filed cross-motions for summary judgment to address whether Auto-Owners was liable for an additional $15,000. In its motion for summary judgment, Plaintiff contended that the 2014 policy and the 2015 policy were separate policies and that the language of the Employee Dishonesty endorsement was ambiguous as to whether the policies could be "stacked."[1] Auto-Owners argued that the two policies at issue were one continuous policy, that the 2015 policy was a renewal of the 2014 policy, and there was one continuous occurrence, as that term is defined in the policy, which spanned two years. Auto-Owners further argued that the language of the Employee Dishonesty endorsement expressly prohibited stacking.

Following a hearing on the cross-motions for summary judgment, the trial court ruled in favor of Plaintiff on the breach of contract claim.[2] As grounds for its ruling, the trial court found the language of the endorsement to be ambiguous, because it could be read in at least two different ways.[3] One interpretation would lead the court to construe

---

[1] "Stacking" refers to attempts by an insured to recover more than the limit of a single policy by seeking a separate payment for each applicable policy period. *See* 10-134 Jeffrey E. Thomas, *New Appleman on Insurance Law Library Edition* § 134.04 (LexisNexis).

[2] Plaintiff also asserted a bad faith claim. The trial court ruled in favor of Auto-Owners on that claim and Plaintiff did not appeal that ruling. Thus, the bad faith claim is not at issue in this appeal.

[3] The trial court noted that it considered "paragraphs C, E(2), E(8), E(9), E(12), and F(4) of the endorsement to be the most important provisions."

the policies as one continuous policy, while the other interpretation would lead the court to construe the policies as two separate contracts. Since ambiguities in insurance contracts should be construed against the insurer, the trial court concluded that it must interpret the provisions in the contract at issue here against Auto-Owners. Accordingly, the trial court found that

> the 2014 and 2015 policies are two separate policies and that the Plaintiff's employee's actions constituted two "occurrences"—one "series of acts" that occurred during the 2014 policy period and one "series of acts" that occurred during the 2015 policy period.

The trial court further found that the matter of stacking commercial liability policies was an issue of first impression in Tennessee and thus looked to similar cases from other jurisdictions for guidance. It found guidance in *E.J. Zeller, Inc. v. Auto Owners Ins. Co.*, 2014 WL 5803028, No. 4-14-04 (Ohio Ct. App. Nov. 10, 2014). The court's order states:

> The Court also finds persuasive the reasoning in *E.J. Zeller, Inc. v. Auto Owners Ins. Co.*, 2014-Ohio-4994 (Ct. App.), which held in favor of the insured under similar facts and identical policy provisions. Specifically, the Ohio court held that paragraph E(2) of the endorsement (Discovery Period for Loss) "acts as an expiration date for the insurer's liability under each policy. Losses caused by acts inside the policy period which are discovered while the policy is still in effect, or in the year immediately after the policy period ended, are still covered."

Auto-Owners then filed this appeal.

### ISSUES

The determinative issues in this appeal are: (1) whether the 2015 insurance policy was a renewal of the 2014 policy or a separate policy; (2) whether the employee dishonesty that spanned two years constituted one or two occurrences; and (3) whether the limits of coverage afforded under each policy year is cumulative.[4]

---

[4] In its brief, Auto-Owners frames the issues as follows:

1. Whether the trial court erred in finding a renewal of an insurance policy created a new contract of insurance with separate limits?
2. Whether the trial court erred in finding that the policy language is ambiguous?
3. Whether the trial court erred in finding there were two "occurrences"?

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In this case, there are no disputed facts, and this is purely an issue of contract interpretation. Issues regarding contract interpretation are matters of law. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

When interpreting insurance contracts, we apply the same rules of construction used to interpret other contracts. *Travelers Indem. Co. of Am. v. Moore & Assocs.*, 216 S.W.3d 302, 305-06 (Tenn. 2007); *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). Insurance contracts "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Travelers* at 306. (quoting *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006)). Furthermore, insurance contracts are to be construed reasonably and logically as a whole. *Id*. If an insurer drafts a policy that is ambiguous we construe any ambiguity in favor of the insured. *Mid-Century Ins. Co. v. Williams*, 174 S.W.3d 230, 240 (Tenn. Ct. App. 2005) (citing *NSA DBA Benefit Plan, Inc. v. Connecticut Gen. Life Ins. Co.*, 968 S.W.2d 791 (Tenn. Ct. App. 1997)). An ambiguity exists when the language is reasonably susceptible to two meanings. *Id*. That is, there is "doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one." *Id.*

The insurance policies at issue here are clear and unambiguous. The 2015 policy expressly provides that it is a renewal of the previous policy. Moreover, two key provisions in the policies at issue, taken together, evince a clear intent that the insured will only be able to recover under one policy for all loss resulting from one employee's embezzlement, regardless of whether the embezzlement constituted a series of acts that took place during the course of two policy periods.

## I. RENEWAL LANGUAGE

The trial court held that "[c]onstruing the policy language in favor of the insured, the Court finds that the 2014 and 2015 policies are two separate policies. . . ." We respectfully disagree having determined that the 2015 policy unambiguously states that it is a renewal of the 2014 policy.

Plaintiff asserts that the language used in the policies at issue have been held "to mean or construed to mean different things by many different courts from other jurisdictions. . . . All of these cases . . . should lead to the inescapable conclusion that the key terms used by [Auto-Owners] in the policies presently before this Court are ambiguous." We respectfully disagree and, instead of looking to other jurisdictions, we shall follow the wisdom as expressed in the *Travelers* and *Brewer* decisions, which is to look at the parties' contract, the policy of insurance. *See Travelers*, 216 S.W.3d at 305-06; *see also Brewer v. Vanguard Ins. Co.*, 614 S.W.2d 360 (Tenn. Ct. App. 1980).

> When an insurance policy renewal is made, unless otherwise provided and called to the attention of the insured, the terms of the original policy become a part of the renewal contract of insurance. *See* 13A Appleman, *Insurance Law and Practice*, § 7648; 17 *Couch on Insurance* 2nd; §§ 64:40, 68:61. . . ." An accurate definition of renewal cannot be made until it is first determined whether the renewal takes effect as an extension or continuation of the original policy or whether it represents the formation of a new although identical contract of insurance." 17 *Couch on Insurance* 2nd, § 68:2 at 659. Whether a renewal insurance policy is a new and independent contract or whether it is an extension or continuation of the original contract depends primarily upon the intention of the parties as ascertained from the instrument itself. *Lewis v. Western Assur. Co.*, 175 Tenn. 37, 130 S/W/2d 982 (1939); 17 *Couch, supra,* § 68:39.

*Brewer*, at 363.

As Auto-Owners correctly states in its brief, it is expressly and repeatedly stated in the policy, declaration and endorsement that the policy is renewed each year.

Pertinent provisions in the policy, declaration and endorsement make it unambiguously clear that each renewal does not form a new and independent contract. The declarations page states that the "policy term" is February 1, 2014, through February 1, 2015, and February 1, 2015, through February 1, 2016, respectively, and states "Renewal Effective" on the first day of the term. The "Calculation of Premium" endorsement states, "On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then

in effect." In addition to what is clearly stated in the policy, declaration and endorsement, the "Notices of Change in Policy Terms" state "Effective with this renewal," certain Policy sections are changed or revised as set forth.

In *Gieringer*, the United States District Court for the Eastern District of Tennessee applied the test in *Brewer* to determine whether a policy was a new contract or a renewal. *Gieringer v. Cincinnati Ins. Co.*, 2010 WL 1050201, No. 3:08-cv-267 at *3 (E. Dist. Tenn. March 22, 2010). The court found that the "renewal policy was, indeed just that – a renewal of the exiting policy." *Id.* The court based its decision on the following:

> In this case, the initial policy, No. HO10341086, was issued on September 8, 2006 for a period from September 8, 2006 to September 8, 2007. This policy states "New Business" in the top righthand corner. The renewal policy, with the same policy number, was presumably issued to be effective on September 8, 2007 for a period from September 8, 2007 to September 8, 2008. This policy clearly states "Renewal" in the top righthand corner. Both policies contain 38 similar pages in the bulk of the documentation. In addition, the categories of coverage are the same, although the limits of coverage are slightly increased-along with an increase in the total premium-in the renewal policy.

*Id.* at *4.

Similar to *Gieringer*, the policy at issue here contains express language that the policy was renewed. Also similar to *Gieringer*, the policy number here remained the same with the exception of the last two digits which appear to represent the year of the policy term.[5] Finally, both policies, like *Gieringer*, contained almost identical language throughout the policy, with the exception of a few changes which were brought to the attention of the insured.[6]

As the *Brewer* decision makes clear, whether a renewal insurance policy is a new and independent contract or an extension or continuation of the original contract "depends primarily upon the intention of the parties *as ascertained from the instrument itself.*" *Brewer*, 614 S.W.2d at 363 (emphasis added). The contract documents at issue

---

[5] The policy number is identical for the years 2014 and 2015, except for the last two digits which appear to represent the year. 2014:034619-03252298-14; 2015: 034619-03252298-15.

[6] Bringing these changes to the attention of a current client is required for any changes to take effect. *See Brewer,* 614 S.W.2d at 363 ("When an insurance policy renewal is made, unless otherwise provided and called to the attention of the insured, the terms of the original policy become a part of the renewal contract of insurance.") This is important because if this was a new contract, there would be no need to bring "changes" to the attention of the insured.

here, unambiguously state that the 2015 policy is a renewal of the 2014 policy, not a separate policy. Based on these expressed statements, we hold that the 2015 policy was a renewal of the 2014 policy.[7]

## II. OCCURRENCE, AS DEFINED IN THE POLICY

The policy states, "The most we will pay for loss in any one 'occurrence' is the Limit of Insurance shown in the Declarations for EMPLOYEE DISHONESTY." The policy defines "occurrence" as "all loss caused by, or involving one or more 'employees', whether the result of a single act or series of acts." A leading legal commentator on insurance explains:

> In defining 'occurrence' as 'all loss caused by or involving, one or more employees,' the definition expressly aggregates 'all loss' caused by any one employee into a single occurrence. Thus the commission of multiple consecutive acts of employee theft by one employee is only one occurrence and the single occurrence limit and deductible apply. Simply stated, if the same employee is always involved, it is only one occurrence. It also is only one occurrence if employees in collusion were stealing from the insured. Only if employees were stealing independently would there be separate occurrences.

10-134 Jeffrey E. Thomas, *New Appleman on Insurance Law Library Edition*, § 134.03 (LexisNexis).

Therefore, under the foregoing interpretation of the definition of occurrence, all loss that stems from multiple consecutive acts of theft by one employee is only one occurrence and the single occurrence limit and deductible apply. Although we have found no Tennessee cases interpreting similar provisions, we find the interpretations of federal courts in Colorado and Mississippi to be persuasive.

In *Wausau Business Insurance v. US Motels Management, Inc.*, 341 F. Supp.2d 1180, 1182 (Dist. Colo. 2004), the insured business discovered that one of its employees had been embezzling money for approximately four years. The business held two commercial crime policies issued by the insurance company for two consecutive policy years, each with a limit of liability of $100,000 for any one "occurrence." *Id.* at 1181-82. Like Plaintiff in this case argues, the insured business contended that since the employee committed acts constituting embezzlement within those two policy years, the court

---

[7] Because of the clear guidance provided by the *Brewer* decision it is not necessary for us to consider the authorities from other jurisdictions Plaintiff relies on.

should consider the acts committed within each policy year as one occurrence for a total of two occurrences, which would entitle it to recover under both policies. *Id*. at 1183-84.

The *Wausau* court noted, however, that "occurrence" was defined as "all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts." *Id.* at 1183. Based on that definition, the court concluded that since the "cause of defendant's loss was the dishonesty of one employee," it constituted one occurrence under the policy's definition. *Id.* at 1184.

Similarly, in *Madison Materials Co., Inc. v. St. Paul Fire & Marine Insurance Co*., 523 F.3d 541, 542 (5th Cir. 2008), an employee of the insured business embezzled money from the company over a period of ten years. Over the same span of time, the defendant insurer had issued a series of insurance policies, each for a term of one year, that provided employee dishonesty coverage. *Id.* Because the losses occurred during ten policy periods, the insured argued that it was "entitled to recover up to the policy limit for each of the ten successive policies" issued by the defendant. *Id.* at 543. This argument was based in part on the insured's argument that the definition of "occurrence" was ambiguous because it did not explicitly provide that an occurrence may span multiple policy periods. *Id*. The *Madison* court disagreed with the insured's argument:

> Policy language is ambiguous only if it can be *reasonably* interpreted in more than one way. As [the employee's] embezzlement scheme consisted of a 'series of related acts involving one or more 'employees,' it undisputably [sic] meets the policy definition of occurrence. Nowhere does policy language state or even imply that acts committed outside of the policy period in question cannot be part of a "related acts" occurrence within the policy period.

*Id*. at 544. (emphasis in original).

Similar to the policy at issue here, the policy in *Madison* stated that "the most we will pay for loss in any one 'occurrence' is the applicable Limit of Insurance shown in the DECLARATIONS." *Id.* at 543. It also had a similar definition of "occurrence" which read "an act or series of related acts involving one or more 'employees.'" *Id*. Based on the foregoing definitions in the insurance policy, the court concluded that, under that definition of occurrence, "there was only one occurrence of employee dishonesty over the ten year period," because one employee "repeatedly committed related acts of embezzlement throughout the decade" of coverage. *Id*. at 544.

We agree with the analysis of the courts above and hold that the "Limit of Insurance" provision and the definition of "occurrence" are unambiguous. The policy at issue states, "The most we will pay for loss in any one 'occurrence' is the Limit of Insurance shown in the Declarations for EMPLOYEE DISHONESTY." The policy

defines "occurrence" as "all loss caused by, or involving one or more 'employees', whether the result of a single act or series of acts."

Here, Plaintiff suffered a loss when one of its employees engaged in a series of related acts over a period of two years. Under the policy's definition of "occurrence," this series of related acts by one employee constituted one occurrence. Therefore, under the "Limit of Insurance" provision, Plaintiff is entitled to recover for one occurrence, not two.

## III. NON-CUMULATION OF INSURANCE

Plaintiff's coverage is also limited by the "Non-Cumulation of Insurance" provision, which states:

> **9. Non-Cumulation of Limit of Insurance:** Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

*New Appleman on Insurance Law Library Edition* states:

> Another clause fidelity insurers traditionally have included in their policies to preclude stacking is the non-cumulation clause. Under a loss sustained policy, such a clause has been understood to mean that there is no stacking of the limits in force during prior policy periods. Rather, when a policy is renewed, it is to be considered only a single continuous policy with a single stated limit that does not increase over time, and except to the extent permitted by a prior insurance clause, there is no coverage under one policy period for loss occurring in another period.

10-134 Jeffrey E. Thomas, *New Appleman on Insurance Law Library Edition*, § 134.03 (LexisNexis).

This provision unambiguously provides that there is to be no cumulation of limits of coverage from one policy year to another and clearly indicates the intentions of the parties for the policy to constitute one continuous and noncumulative contract.[8]

---

[8] *See Kavaney Realtor & Developer, Inc. v. Travelers Ins. Co.*, 501 N.W.2d 335, 342 (N. Dakota 1993) ("The combination of the provision against cumulation of coverage and this provision, extending coverage to prior losses, indicates the intention that the policies constitute one continuous and noncumulative contract").

## IN CONCLUSION

Therefore, the judgment of the trial court is reversed, and this matter is remanded with instructions to enter judgment pursuant to this opinion. Costs of appeal are assessed against Tennessee Clutch and Supply, Inc.

_____
FRANK G. CLEMENT JR., P.J., M.S.