[725 NYS2d 469]

Shared-Interest Management, Inc., Respondent, v CNA Financial Insurance Group, Also Known as CNA Financial Insurance, et al., Appellants.

Third Department, June 7, 2001

**APPEARANCES OF COUNSEL**

*Stockman, Wallach, Lentz & Gamell, L. L. P.,* New York City (*Mark S. Gamell* of counsel), for appellants.

*Walsh & Walsh, L. L. P.,* Saratoga Springs (*Michael S. Caruso* of counsel), for respondent.

*Wolff & Samson,* Roseland, New Jersey (*Scott D. Baron* of counsel), for The Surety Association of America, *amicus curiae.*

### OPINION OF THE COURT

MERCURE, J. P.

Plaintiff had in effect a renewal commercial crime insurance policy issued by defendant Firemen's Insurance Company of Newark, New Jersey, a subsidiary of defendant Continental Insurance Company, for the period June 8, 1993 to June 8, 1996 (hereinafter the. Continental policy period) and, following Continental's merger with defendant CNA Financial Insurance Group, for the period June 8, 1996 to June 8, 1999 (hereinafter the CNA policy period). Notably, the policy's Employee Dishonesty Coverage Form provides:

"B. LIMIT OF INSURANCE

"The most we will pay for loss in any one 'occurrence' is the applicable Limit of Insurance shown in the Declarations."

The same form defines the term "occurrence" in paragraph (D) (3) (b) as follows:

" 'Occurrence' means all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts."

In addition, paragraph (B) (8) of the Crime General Provisions Form provides coverage for losses sustained during the period of prior insurance issued by another carrier, but imposes the following limitation:

"b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

"(1) This insurance as of its effective date; or

"(2) The prior insurance had it remained in effect."

Similarly, paragraph (B) (9) of the Crime General Provisions Form makes the following provision for loss covered under this insurance and under prior insurance issued by Firemen's or any affiliate:

"If any loss is covered:

"a. Partly by this insurance; and

"b. Partly by any prior *cancelled or terminated insurance* that we or any affiliate had issued to you or any predecessor in interest;

"the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance" (emphasis supplied).

The very next paragraph, entitled "10. Non-Cumulation of Limit of Insurance," states:

"Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period."

On June 2, 1997, plaintiff filed a proof of loss for thefts committed by an employee, Sandra Krupski, between April 7, 1994 and April 28, 1997. CNA found that plaintiff had sustained a substantiated covered loss of $460,316.15. CNA paid plaintiff the policy limit of $100,000 and plaintiff executed a release and assignment of claim in favor of Firemen's acknowledging plaintiff's receipt of that sum "in payment in full and/or compromise settlement of claim presented by [plaintiff], under [the Firemen's policy in effect during the CNA policy period] in favor of [plaintiff], as a result of the default of [Krupski], as described in [plaintiff's] Proof of Loss dated June 2, 1997."

Subsequently, based upon evidence that its loss exceeded $100,000 during the Continental policy period, plaintiff filed a claim for an additional $100,000 under the policy in effect during that period. Interpreting the policy as permitting recovery of no more than the policy limit during the effective period of the policy, including renewals, CNA rejected the claim and this action ensued. Following joinder of issue, plaintiff moved and defendants cross-moved for summary judgment. Supreme Court granted summary judgment in favor of plaintiff and defendants appeal.

We conclude that an essential predicate for plaintiff's action and Supreme Court's grant of summary judgment in plaintiff's favor, i.e., that the policy in effect during the Continental policy period and the one in effect during the CNA policy period constitute separate policies of insurance, is erroneous as a matter of law, requiring that we reverse Supreme Court's order and judgment and grant summary judgment in favor of defendants. Notably, the initial policy issued to plaintiff in 1990 established the policy period as: "From June 8, 1990 to Until Cancelled." A June 8, 1993 notice of renewal issued by Continental indicated

that the policy had been renewed for the "Premium Term" of June 8, 1993 to June 8, 1996. Then, a notice of renewal issued by CNA on June 8, 1996 indicated that the policy had been renewed for the "Premium Term" June 8, 1996 to June 8, 1999. Simultaneously, CNA provided notice of a change in the policy number effective June 8, 1996, which was necessitated by the Continental-CNA merger and the adoption of CNA's numbering system.

Plaintiff has pointed to nothing in the record that establishes any finite "policy period" and, based upon our review of the record, we agree with defendants that what plaintiff would characterize as separate policy periods are simply three-year premium terms, i.e., the time period during which the policy premium is established. We are also unpersuaded by plaintiff's illogical and unwarranted premise that, following Continental's merger with CNA, Firemen's somehow became a different insurance company from the one that originally issued the policy to plaintiff. Nor do the holdings in *Campbell Milk Co. v United States Fid. & Guar. Co.* (161 App Div 738) or *Moore v Metropolitan Life Ins. Co.* (75 Misc 2d 168, *affd without opn* 41 AD2d 601, *affd* 33 NY2d 304), relied upon by plaintiff, warrant a contrary result. Although dealing with a similar "stacking" of coverage issue, *Campbell Milk Co. v United States Fid. & Guar. Co.* (*supra*) offers no assistance to plaintiff because it stands for nothing more than the proposition that the terms of the policy under consideration by that Court at that time did not effectively prevent stacking. We believe it suffices to say that the policy provisions under consideration in that case are far different from the very effective "antistacking" provisions of the present policy.

*Moore v Metropolitan Life Ins. Co.* (33 NY2d 304) actually bears very little relationship to the present case. There, the Court of Appeals considered the question of whether a 1971 amendment to Insurance Law former § 221 (5), which required that health insurance policies providing coverage for a physician's or psychiatrist's psychiatric or psychological services or for the diagnosis and treatment of mental, nervous or emotional disorders or ailments also provide coverage for like services provided by licensed psychologists when the services rendered are within the lawful scope of their practice, "violate[d] the constitutional prohibition against interfering with the right of contract" (*id.*, at 310). Noting that the amendment applied only to policies written, renewed, modified or altered after its July 6, 1971 effective date, the Court found

that there was no constitutional impairment of the defendant's contract rights because the group policy it issued for State employees reserved to it the absolute right to terminate the policy on its anniversary date or to change the premium rate upon any premium due date by giving specified notice thereof, thereby providing the defendant with an effective means of avoiding the statutory requirement (*id.*, at 311-312). Conversely, "[w]here * * * the insurer does not have the right to terminate the policy or change the premium rate without consent of the State, renewal, by the payment of premiums, merely continues in force the pre-existing policy, and statutes enacted subsequent to its original enactment cannot be applied" (*id.*, at 312). Obviously, no analogous issue is presented in this case.

Although not necessary for our determination, it is our further opinion that, even if the policy, as in effect during the Continental policy period and the CNA policy period, were to be treated as two entirely separate policies, the unambiguous antistacking provisions, and particularly paragraphs (B) (8) and (9) of the Crime General Provisions Form, would still preclude the double recovery sought by plaintiff. Given the policy's clear overall intent to preclude a stacking of coverage from year to year or period to period (*see*, Crime General Provisions Form paragraph [B] [10]), we conclude that Supreme Court erred in effectively writing paragraph (B) (9) out of the policy by limiting the word "terminated" to an insured's election to end coverage. If a renewed policy is to be treated as a new, separate policy, then the language "cancelled or terminated insurance" as used in paragraph (B) (9) is sufficiently broad to include insurance that has terminated by expiration of its term.

As a final matter, we acknowledge that our reasoning is contrary to that expressed in *Spartan Iron & Metal Corp. v Liberty Ins. Corp.* (2001 US App LEXIS 5120, 2001 WL 301111 [4th Cir, Mar. 28, 2001]), which we decline to follow.

Plaintiff's remaining contentions have been considered and found to be unavailing.

PETERS, CARPINELLO, ROSE and LAHTINEN, JJ., concur.

Ordered that the order and judgment are reversed, on the law, with costs, motion denied, cross motion granted, summary judgment awarded to defendants and complaint dismissed.