[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 1, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15533

_____

D.C. Docket No. 07-22248-CV-FAM

PBSJ CORPORATION,

Plaintiff-
Counter-Defendant-
Appellant,

versus

FEDERAL INSURANCE COMPANY,

Defendant-
Counter-Claimant-
Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 1, 2009)

Before BARKETT and HULL, Circuit Judges, and SCHLESINGER,[*] District Judge.

PER CURIAM:

The PBSJ Corporation ("PBSJ") appeals the district court's grant of an adverse summary judgment for Federal Insurance Company ("Federal"). PBSJ had purchased an insurance policy from Federal that covered criminal acts, including employee theft, for each year between 1992 and 2005 in the amount of $2 million. PBSJ sustained $42 million in losses due to employee theft during this period of time. However, it became aware of the loss in March 2005, during the 2004-2005 policy period. PBSJ contends that it is entitled to recover $2 million under each policy in effect during the years in which the employee theft occurred for a total of $17 million. Federal contends that PBSJ is limited to recover $2 million only once under the 2004-2005 policy in effect at the time PBSJ discovered and reported the loss to Federal. We have carefully considered the policy language and the arguments of the parties and affirm.

PBSJ's entire case rests upon its interpretation of the following provision of the Declarations section:

> THE EXECUTIVE LIABILITY AND INDEMNIFICATION, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP

---

[*] Honorable Harvey E. Schlesinger, United States District Court for the Middle District of Florida, sitting by designation.

2

LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE APPLICABLE) ARE ALL WRITTEN ON A CLAIMS MADE BASIS. EXCEPT AS OTHERWISE PROVIDED, THESE COVERAGE SECTIONS COVER ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD.

This passage cannot bear the weight PBSJ places upon it. PBSJ argues that this provision in the Declarations section demonstrates that because Crime Coverage is not included in the list of coverage enumerated as "claims made," this coverage must of necessity be considered "occurrence-based" and therefore the prior policies would apply. The fact that the Executive Liability and Indemnification Coverage, Fiduciary Liability Coverage, and Employment Practices Liability Coverage "are all written on a claims made basis" and that "[t]hese coverage sections cover only claims first made against the insured during the policy period" does not and cannot, by negative implication, mean that the remaining unenumerated policies – namely, Crime Coverage and Kidnap/Ransom and Extortion Coverage – are necessarily written as "occurrence" policies.

More importantly, PBSJ's interpretation also flies in the face of very specific language throughout the remainder of the policy that makes clear that each policy terminates on a specific date and that each new policy terminates the prior policy and any claims thereunder with the exception of the specified reporting grace

3

period.  To give effect to PBSJ'S interpretation of the Declarations section would nullify the majority of these policy provisions.

For example, the General Terms and Conditions section of the 04/05 policy provides in relevant part:

>Paragraph 11 "Termination of Policy or Prior Coverage Section"
>
>>This policy of any coverage section shall terminate at the earliest of the following times:
>>(A)     sixty days after the receipt by [Federal] of a written notice of termination from [PBSJ],
>>(B)     upon the receipt by [PBSJ] of written notice of termination from [Federal],
>>(C)     upon expiration of the Policy Period as set forth in Item 2 of the Declarations for this policy, or
>>(D)     at such other time as may be agreed upon by [PBSJ] and [Federal].
>
>Paragraph 12 "Termination of Prior Bonds and Policies"
>
>>Any bonds or policies . . . specified in Item 4 of the Declarations . . . shall terminate, if not already terminated, as of the inception date of this policy.  Such prior bonds or policies shall not cover any loss under the Crime . . . coverage sections not discovered and notified to the Company prior to the inception date of this policy. (emphasis added).
>
>Paragraph 13 "Definitions"
>
>>When used in this policy:
>>
>>>Policy Period means the period of time specified in Item 2 of the Declarations of this policy subject

4

to prior termination in accordance with [Paragraph] 11 above. If this policy is less than or greater than one year, then the Limits of Liability specified in the Declarations for each coverage section shall be the . . . maximum limit of liability under such coverage section for the entire period.

The plain language of the 04/05 policy expressly provides that the only policy in effect (i.e. providing coverage) was the then-current 04/05 policy. Each policy contained the identically worded provisions as to their respective policy periods. The Declarations section of each policy explicitly sets out its effective coverage dates and also expressly notes that the prior policy (with the policy number and its respective start and end dates of the policy period) is terminated.

General Terms and Conditions Paragraph 11 reiterates this intention by explaining that the policy terminates at the expiration of the enumerated policy period. In what can be best construed as a firewall in case prior policies did not contain a self-terminating provision like Paragraph 11, General Terms and Conditions Paragraph 12 reiterates this intention by explaining its corollary principle that any bonds and policies "shall terminate, if not already terminated, as of the inception date of this policy."

Finally, Paragraph 13 defines the policy period as the period specified in the Declarations section. The Court's interpretation of the plain language of the policy gives meaning to the policy as a whole; PBSJ's reliance on the Declarations

5

section to the exclusion of <u>all</u> other policy provisions does not. See <u>Harborside Refrigerated Sys., Inc. v. IARW Ins. Co.</u>, 759 F.2d 829, 830 (11th Cir. 1985) ("In construing an insurance policy to determine the intention of the parties, the court must consider the instrument in its entirety. If possible, the court must adopt a construction which will give effect to the total instrument and its provisions."); <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So. 2d 29, 34 (Fla. 2000) (noting that "we must read [the limitation on liability] clause in connection with the entire policy, including the liability coverage provisions and the policy declarations.").

Furthermore, courts interpreting identical crime insurance policies issued by Federal have held that they are not, as PBSJ contends, occurrence policies. See, e.g. <u>J.I. Corp. v. Fed. Ins. Co.</u>, 920 F.2d 118, 120 (1st Cir. 1990) (holding that the "ordinary meaning" of Federal employee theft policy, which contained identical exclusions, "is that no coverage exists unless written notice is given within the period prescribed by the policy, the instant provisions clearly reveal a "claims made" type policy."); <u>JEP Mgmt., Inc. v. Fed. Ins. Co.</u>, 2006 WL 2372961, at *5 (Pa. Com. Pl. Aug. 8, 2006) (interpreting identical Crime Coverage exclusions by Federal to bar coverage "because plaintiffs did not discover and provide notice within the time prescribed by the policy, which had been in effect the prior year").

PBSJ relies upon <u>City of Miami Springs v. Travelers Indem. Co.</u>, 365 So.

6

2d 1030 (Fla. Dist. Ct. App. 1978), to argue that its recovery may be aggregated across policies. This case, however, is more analogous to Reliance Ins. Co. v. Treasure Coast Travel Agency, Inc., 660 So. 2d 1136, 1137-38 (Fla. Dist. Ct. App. 1995) than Miami Springs. As the Reliance court noted, the policy at issue in Miami Springs provided only that the policies would not be "cumulative from year to year." Reliance, 660 So.2d at 1137. The policy in Miami Springs did not contain the explicit language that limited recovery to a maximum amount under that or other policies. Id. As did the court in Reliance, we find that the presence of both a non-accumulation clause[1] and a clause limiting recovery to a stated maximum ($2 million[2] in PBSJ's policy with Federal) supports the conclusion that

---

[1]Crime Coverage section Paragraph 17 provides in relevant part:

Paragraph 17 "Non-Accumulation of Liability"

> Regardless of the number of years coverage shall continue in force, and the number of premiums which shall be payable or paid or any other circumstances whatsoever, the liability of [Federal] with respect to any loss or losses shall not be cumulative from year to year or from period to period.

[2]Crime Coverage section Paragraph 16 provides in relevant part:

Paragraph 16 "Limit of Liability"

> Payment of any loss under [the Crime Coverage] section shall not reduce the liability of [Federal] for other losses; provided, however, that the maximum liability of [Federal] shall not exceed the dollar amount set forth in Item 1 of Declarations [i.e. $2 million] . . . for any loss or losses caused by any Employee . . . resulting from a single act or any number of such acts, regardless

7

the insured is limited to the maximum recovery under one policy for an employee theft spanning multiple policies and years.

Under the clear and unambiguous terms of the 04/05 Policy, the district court did not err in finding that PBSJ is entitled to recover only the $2 million maximum limit, which it has already recovered, and is not entitled to recover any amount under any of the predecessor policies.

**AFFIRMED.**

---

of when, during the period of this coverage section or prior thereto, such acts occurred . . . ." (emphasis added).