OSCN Found Document:FIRST UNITED METHODIST CHURCH OF STILLWATER, INC. v. PHILADELPHIA INDEMNITY INSUR. CO.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 FIRST UNITED METHODIST CHURCH OF STILLWATER, INC. v. PHILADELPHIA INDEMNITY INSUR. CO.
2016 OK CIV APP 59
Case Number: 114396
Decided: 08/26/2016
Mandate Issued: 09/27/2016
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2016 OK CIV APP 59, __ P.3d __

 

FIRST UNITED METHODIST CHURCH OF STILLWATER, INC., Plaintiff/Appellee,
v.
PHILADELPHIA INDEMNITY INSURANCE COMPANY, a foreign corporation d/b/a PHILADELPHIA INSURANCE COMPANIES, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF PAYNE COUNTY, OKLAHOMA

HONORABLE PHILLIP CORLEY, TRIAL JUDGE

AFFIRMED

Kieran D. Maye, Jr., Andrea R. Rust, MILLER DOLLARHIDE, Oklahoma City, Oklahoma, for Plaintiff/Appellee
D. Lynn Babb, PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P., Oklahoma City, Oklahoma, for Defendant/Appellant

DEBORAH B. BARNES, JUDGE:

¶1 In this breach of contract action, Defendant/Appellant Philadelphia Indemnity Insurance Company, a foreign corporation d/b/a Philadelphia Insurance Companies (Philadelphia) appeals from a trial court Judgment granting summary judgment to Plaintiff/Appellee First United Methodist Church of Stillwater, Inc. (First United) in the amount of $100,000, interest, and attorney fees and denying Philadelphia's motion for summary judgment. We affirm.

BACKGROUND

¶2 The facts are undisputed. During the years 2009 through 2012, First United's then finance manager embezzled nearly $200,000. The theft was discovered by First United in an end-of-the-year review of finances in December 2012. An audit of First United's financial records revealed that at least $50,000 had been embezzled by the employee in calendar year 2011 and in calendar year 2012.[1]

 

¶3 Four policies that included coverage for employee dishonesty were issued to First United by Philadelphia as follows:

 

Policy Number: PHPK514238
Policy Period From: 1/01/2010 To: 01/01/2011

Policy Number: PHPK669064
Policy Period From: 1/01/2011 To: 01/01/2012 [2011 Policy]

Policy Number: PHPK812484
Policy Period From: 1/01/2012 To: 01/01/2013 [2012 Policy]

Policy Number: PHPK961370
Policy Period From: 1/01/2013 To: 01/01/2014 [2013 Policy][2]

¶4 In addition to stating the policy number and policy period, each of the "Common Policy Declarations" for the individual policies states: "In return for the payment of the premium, and subject to all the terms of this policy, we [Philadelphia] agree with you [First United] to provide the insurance as stated in this policy." It further states: "This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment." The premiums for the various types of coverage are set forth in each policy and a total premium for each policy is stated.

¶5 First United's policies with Philadelphia provide "Optional Coverages" for employee dishonesty "for which a limit of insurance is shown in the Coverage Summary . . . ." The Crime Coverage Form sets out the limit of insurance and deductible for "Coverage Summary" and "Optional Coverage Summary" preceded by the proviso that "Various provisions in the policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." In the section titled "Coverage," the policies provide a definition for "Occurrence" as meaning: "(1) Act or series of related acts involving one or more persons; or (2) Act or event, or a series of related acts or events not involving any person."[3]

 

¶6 Section C, "Limits of Insurance," provides:

 

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Coverage Summary

1. For Money . . . , the applicable Limit of Insurance is:
a. The Basic Limit of Insurance shown in the Coverage Summary if no Superseding Limit of Insurance is shown;
or
b. The Superseding Limit of Insurance if a Superseding Limit is shown in the Coverage Summary.
2. For all other coverages, the applicable Limit of Insurance is the Limit shown in the Coverage Summary.

¶7 Under section "F. General Conditions" the following conditions, among others, are stated:

Unless stated otherwise in any Coverage or Optional Coverage in this Crime Coverage Form, the Policy Declarations or an endorsement, the following General Conditions apply to all Coverages and Optional Coverages provided by this Coverage Form:

. . . .
3. Discovery Period for Loss
We will pay only for covered loss discovered no later than one year from the end of the policy period.
4. Duties in the Event of Loss
After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:
a. Notify us as soon as possible.
b. Submit to examination under oath at our request and give us a signed statement of your answers.
c. Give us a detailed, sworn proof of loss within 120 days.
d. Cooperate with us in the investigation and settlement of any claim[.]

¶8 Section F also provides: "11. Non-Cumulation of Limit of Insurance[.] (non-cumulation provision) Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance accumulates from year to year or period to period." It also provides in subsection 14:

Policy Period[.] a. The Policy Period is shown in the Common Policy Declarations. b. Subject to the Loss Sustained During Prior Insurance condition,[4] we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

The policies also contain a provision in Section F(10) concerning loss covered under "This Insurance and Prior Insurance" issued by Philadelphia.[5]

¶9 First United gave notice to Philadelphia of the thefts in January 2013 that it discovered in December 2012. Philadelphia conducted an investigation and ultimately paid First United the limit of liability under the 2013 Policy in the amount of $50,000. First United brought this action for breach of contract because it claims it has coverage under the separate insurance policies in 2011 and 2012, each with a limit of liability of $50,000 for the thefts that occurred during those policy years and discovered within the timeframe specified in the 2011 Policy and 2012 Policy. Philadelphia denies it is in breach and contends it has fulfilled its contractual obligation under the policy presently in effect, the 2013 Policy.

¶10 In its motion for summary judgment, Philadelphia argues the 2013 Policy, having an effective policy period of January 1, 2013, to January 1, 2014, succeeded the 2012 Policy, having an effective policy period of January 1, 2012, to January 1, 2013. It argues "[i]n order to obtain coverage each year, a renewal contract was created." Philadelphia asserts it anticipates First United "will argue the policies were merely renewed each year with no break in the coverage and as such, [First United] should be able to recover for every year in which a loss occurred. This argument, in addition to being contrary to the clear language of the policy, is also contravened by Oklahoma law," and cites Oklahoma cases in which it is stated that "the renewal of an insurance policy is a new contract,"[6] and that "[t]he term 'expiration' as used in an insurance policy, refers to the termination of the policy by lapse of time covering the policy period . . . ."[7]

¶11 Philadelphia argues the thefts occurred during a several year period from 2009 through 2012 and were not "discovered" until December 2012. The policies, it argues, provide a discovery period of one year, and because "the embezzlement was discovered in calendar year 2012 and the acts giving rise to the claim occurred in 2008-2012 but not reported until 2013, only those claims occurring during 2012 would be recoverable, because they were not discovered within one year from the end of the policy period."

¶12 Philadelphia asserts the "ultimate issue" is whether First United has coverage under more than one policy of insurance. It argues First United's attempt to apply the policy limits not only for the 2012 Policy but also the 2011 Policy "is clearly and unambiguously prohibited by the policy of insurance," referencing Section F(11), the non-cumulation provision. It argues that although no Oklahoma decision has interpreted the "non-cumulation" provision, the decisional law from "other jurisdictions agree policy limits do not accumulate from one year to the next."[8] Relying on Business Interiors Inc. v. Aetna Casualty and Surety Company, 751 F.2d 361 (10th Cir. 1984), Philadelphia argues the definition of "occurrence" limits First United to "one occurrence irrespective of the number of thefts which may have occurred during any one policy year and the number of years the thefts may have taken place." Philadelphia contends that because occurrence is defined as "all loss . . . whether the result of a single act or series of acts," under the tenets of Cranfill v. Aetna Life Insurance Co., 2002 OK 26, 49 P.3d 703, and Max True Plastering Co. v. U.S. Fidelity & Guaranty Co., 1996 OK 28, 912 P.2d 861, "and the clear language of the policy, First United may receive only one policy limit for Employee Dishonesty irrespective of the number of loss events which took place during any one policy year or the number of policy years in which a theft occurred." Because it has paid the applicable limit of $50,000, Philadelphia argues it has satisfied its obligations under the 2013 Policy to First United and is entitled to judgment as a matter of law.

¶13 First United responded and filed its own motion for summary judgment in which it agrees each policy was given a new and different policy number; that each is its own contract. However, contrary to Philadelphia's characterization of its argument, First United does not argue it is entitled to the limits of coverage in both 2011 and 2012 under the 2013 Policy; rather, it argues, it is entitled to recovery for the 2011 theft under the provisions of the 2011 Policy because the 2011 theft was discovered by it within the one-year limitation under the 2011 Policy. It also argues it is entitled to recovery under the 2012 Policy for the thefts that occurred in 2012 because that loss was discovered within 2012, and, therefore, within the one-year limitation under the 2012 Policy. It does not seek recovery for each act of theft - as a separate "occurrence" - committed by its employee during either of those policy periods.

¶14 First United also asserts it has found no Oklahoma decisional law interpreting the language of the policy provisions at issue in the present case, but argues other jurisdictions have interpreted that language. It cites several cases from other jurisdictions in which the courts have found similar policy language to be ambiguous and have construed those policies to include, not exclude, coverage. First United also places great reliance on E.J. Zeller, Inc. v. Auto Owners Insurance Company, No. 4-14-04, 2014 WL 5803028 (Ohio Ct. App. Nov. 10, 2014) (unpublished), wherein the Ohio appellate court examined multiple provisions of insurance policies similar to the policies at issue in the present case, determined the policy provisions were unambiguous, and determined the insured had coverage under each of two separate policies.

¶15 After a hearing on the motions, the court subsequently filed its Judgment granting First United's motion, denying Philadelphia's motion, and awarding First United $100,000, prejudgment and post judgment interest, and attorney fees and costs. Philadelphia appeals.

STANDARD OF REVIEW

¶16 The review standard for the grant of summary judgment is de novo. Wood v. Mercedes-Benz of Okla. City, 2014 OK 68, ¶ 4, 336 P.3d 457. "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051 (citation omitted).

ANALYSIS

¶17 Philadelphia asserts the key policy provisions are the definition of "occurrence" as it applies to employee dishonesty, and the non-cumulation provision. It asserts these provisions are unambiguous and must be interpreted according to their terms. Philadelphia contends the language of those provisions required it to pay $50,000 to First United for its employee's embezzlement, the amount it paid to First United. First United, on the other hand, argues the employee's embezzlement took place in three different years, under three separate policies and in three separate policy periods; thus, it argues, it is entitled to coverage for employee dishonesty during the period of each policy subject to the "discovery" and one-year recovery limitation stated in each policy. First United also contends the policy provisions do not clearly and unambiguously state that coverage under prior polices is excluded; thus, to the extent provisions of the policies are susceptible to more than one meaning, those provisions are ambiguous and must be construed against Philadelphia and in favor of First United.

¶18 The Oklahoma Supreme Court recently explained that

Oklahoma law involving the interpretation of insurance contracts is well settled. Parties are at liberty to contract for insurance to cover such risks as they see fit and they are bound by terms of the contract, and courts are not at liberty to rewrite the terms of an insurance contract. In Oklahoma, the cardinal rule in contract interpretation is to determine and give effect to the intent of the parties. When policy provisions are clear, consistent, and unambiguous, we look to the plain and ordinary meaning of the policy language to determine and give effect to the parties' intent.

Porter v. Okla. Farm Bureau Mut. Ins. Co., 2014 OK 50, ¶ 12, 330 P.3d 511 (citations omitted) (internal quotation marks omitted). However, the Supreme Court further stated:

When the language is susceptible to two constructions before applying the rules of construction, the policy is ambiguous. However, neither forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a [more] favorable consideration to either party than that expressed in the contract. The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others. Insurance contracts are contracts of adhesion, which are interpreted most strongly against the party that prepared the contract. We will not impose coverage if it is clear from the policy language that loss from a particular risk is not covered.

Id. ¶ 13 (citations omitted) (internal quotation marks omitted).

¶19 As most recently stated by the Supreme Court in Serra v. Personal Representative of Estate of Broughton, 2015 OK 82, 364 P.3d 637:

When an insurance provision is ambiguous, words of inclusion will be construed liberally in the insured's favor, and words of exclusion will be construed strictly against the insurer. When an insurer desires to limit its liability under a policy, it must use language which clearly and distinctively reveals its stated purpose. It should be construed in non-technical, common terms. [If there is an] ambiguity, [the language] should be given the definition which favors coverage.

Id. ¶ 10 (citations omitted).

¶20 Philadelphia cites several cases from other jurisdictions in support of its assertion that "policy limits do not accumulate from one year to the next," and that First United is "limited to but one occurrence under the policy."[9] However, it only discusses Business Interiors. It argues,

A similar set of facts was presented to the 10th Circuit Court of Appeals in the case of [Business Interiors]. Business Interiors had submitted a loss for employee dishonesty to Aetna resulting from embezzlement by an employee over a seven-month time span involving 31 forged checks and nine with material alterations. Aetna asserted that the policy of insurance limited Business Interiors' recovery to a single occurrence. Both the District Court and the appellate court agreed with Aetna finding, "the employee's fraudulent acts constituted a single loss for Business Interiors."

However, the Business Interiors Court was concerned only with a series of thefts that occurred over seven months and within the policy year for which the insured sought coverage.[10] The court did not have before it the issue presented here and did not consider the effect of "occurrence" in conjunction with the policy provisions involved in this case. Moreover, unlike the insured in Business Interiors, First United does not contest that all loss caused by the employee's acts of theft during a particular policy period was but one occurrence for that policy period.

¶21 Three other cases upon which Philadelphia relies, however, squarely treat the issues presented here; that is, was policy language, similar to the polices at issue here, ambiguous. All three courts held no ambiguity was present in the policy provisions examined by them. As to "occurrence," relying on Business Interiors and without further explanation, the court in Reliance Insurance Company v. Treasure Coast Travel Agency, Inc., 660 So. 2d 1136 (Fla. Dist. Ct. App. 1995), determined that although the "employee's embezzlements occurred over a four year period, they constitute a single occurrence." Id. at 1137. The court also considered the prior loss and non-cumulation provisions of the policies and stated these two provisions "purport to limit coverage to one of the 1990 and 1991 policies, whichever has the higher limits." Id. Each of those polices had "$25,000 for this occurrence." Id. The court distinguished cases from other jurisdictions and Florida courts by asserting that in those cases only the non-cumulation provision and not the prior loss provision was in the policy and determined that

If these policies only contained [the non-cumulation provisions], and not [the prior loss provision], we might well be inclined to follow the courts which have held it insufficient to restrict coverage to one of the policies. In light of [the prior loss provision], however, we think that this insurer has accomplished what insurers with non-cumulative provisions alone apparently intended, but failed to state with sufficient clarity to be given effect by the majority of courts which have construed it.

Id. at 1137-38 (footnote omitted). The court specifically relied on Graphic Arts in support of its holding.[11]

¶22 Similarly, in Wausau Business Insurance Company v. U.S. Motels Management, Inc., 341 F. SupP.2d 1180 (D. Colo. 2004), applying Colorado law, the court, like the court in Reliance, relied on Business Interiors and found nothing ambiguous in the policy definition of occurrence and held an employee's embezzlement scheme constituted a single occurrence though that scheme included multiple and varied acts of theft. Id. at 1183-84. The court also rejected the insured's argument that even if the employee's "scheme constituted a single occurrence, because that occurrence spanned more than one policy period, coverage was triggered under each policy." Id. at 1184. Referencing the prior loss and non-cumulation provisions of the policies - policies similar to the non-cumulation and prior loss provisions at issue in the present case - the court concluded "[t]he intent of [these provisions] could not be clearer." Id. As had the Reliance Court - and, in fact, citing Reliance - the Wausau Court found determinative the presence of both these provisions in the policies and distinguished the policies from those in cases where the courts only had for review the non-cumulation provision.

¶23 In 2008, the Fifth Circuit Court of Appeals also found no ambiguity in the definition of "occurrence" and rejected the insured's interpretation "as unreasonable." Madison Materials Co., Inc. v. St. Paul Fire & Marine Ins. Co., 523 F.3d 541, 543 (5th Cir. 2008). As had the courts in Reliance and Wausau, the Madison Court determined there had been but one cause of the insured's resulting injury - the employee's theft - though that theft occurred over the course of a decade:

[The employee] repeatedly committed related acts of embezzlement throughout the decade of [the insurer's] coverage, but there was only one cause of the injury sustained by [the employee's] dishonesty. As there was but a single cause of [the insured's] injury, and as the policy states that multiple related acts are to be treated as a single occurrence, there was only one occurrence of employee dishonesty over the ten year period.

Id. at 543-44. The court rejected the insured's argument that while multiple acts of theft during a policy period may be one occurrence, there was a single occurrence in each policy year, and rejected the insured's claim that "because [the policy] fails to state expressly that an occurrence may span multiple policy periods" the policy wording is ambiguous. Id. at 544. The court disagreed stating,

Policy language is ambiguous only if it can be reasonably interpreted in more than one way. As [the employee's] embezzlement scheme consisted of a "series of related acts involving one or more 'employees,'" it undisputably meets the policy definition of occurrence. Nowhere does policy language state or even imply that acts committed outside of the policy period in question cannot be part of a "related acts" occurrence within that policy period. We recognize that other circuits have found similar definitions of "occurrence" to be ambiguous, but we are not persuaded that under Mississippi law, the definition of occurrence in this policy is ambiguous.

Id. at 544-45 (footnotes omitted). The Madison Court also rejected the insured's contention that even if the definition of occurrence is not facially ambiguous, it becomes so when read in context with other provisions of the policy that provide for recovery of loss occurring during the policy period. The court, however, determined that the prior loss provisions of the policy made the insurer "liable for one policy's limit if a single occurrence spans multiple policy periods or is covered by a prior insurance policy." Id. at 545 (citing, among others, Wausau). The court thus concluded the insured was entitled to no more than the limit of liability under the policy in effect when the theft was discovered.

¶24 Although the Madison Court did not consider (or have presented for its consideration) a non-cumulation provision in reaching its decision, all three cases give great weight to the prior loss provisions of the policies and all three cases turn on a definition of occurrence that looks to the cause of the loss for the resulting injury as the occurrence; that is, the dishonesty of the employee. While we appreciate the perspective of these courts, we disagree with their conclusions that the policy provisions in the present case - similar to the policies in those cases - have but one reasonable interpretation, the interpretation Philadelphia urges. We find the comprehensive analysis undertaken by the Zeller Court is the better-reasoned, and, therefore, more persuasive analysis.

¶25 First United places great weight on the reasoning used by the Zeller Court and urges this Court to adopt its interpretation of the insurance provisions at issue in this case.[12] That court concluded the insurance contract provisions were clear and unambiguous and did not preclude recovery for employee dishonesty under prior year policies covering employee dishonesty.[13] First United argues, however, that the Zeller Court's reasoning demonstrates the operative policy provisions are susceptible to two different, reasonable interpretations and are therefore ambiguous,[14] and, pursuant to the reasonable expectations doctrine of contract interpretation, must be interpreted in favor of itself, the insured. We agree.

¶26 Central to the Zeller Court's reasoning was whether the provisions of the insurance contract "operate[d] to exclude coverage under prior policies," 2014 WL 5803028, ¶ 22, although it recognized those provisions were not "specifically titled exclusions in the policy," id. ¶ 17. Under Ohio law, "an exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded." Id. (citation omitted).

¶27 The court reasoned that while "occurrence" as defined in the insurance contract did not in itself create an exclusion from coverage,[15] "what losses are attributable to an 'occurrence' has an impact on how other exclusions operate." Id. ¶ 24. The court recognized that "each act of employee dishonesty creates an individual loss. The term 'occurrence' is used to aggregate these individual losses together." Id. "When determining which individual losses are aggregated together, . . . [h]owever," the appellate court reasoned

whether the term "occurrence" has any effect on prohibiting recovery under multiple policies is dependent upon how the term is used. Indeed, were the term not used at all in the rest of the policy, any analysis of the term would be irrelevant to determining coverage. How much loss is included in an "occurrence" will depend upon how it is used in a specific provision. Therefore, we will analyze what losses are encompassed by the term by discussing its presence, or absence, in the other provisions.

Id. ¶ 25 (emphasis added). The Zeller Court examined several key provisions of the insurance contract - the policy period,[16] discovery of loss,[17] prior loss,[18] non-cumulation,[19] and limit of insurance[20] provisions - specifically with regard to whether the provisions referenced the term "occurrence" within the particular provision and what the effect was of its absence or inclusion within that provision.

¶28 As to the policy period, the Zeller Court determined,

This provision excludes any loss caused by acts of employee dishonesty outside the policy period from coverage. Thus, losses attributable to acts that occurred during prior policy periods would not be covered under the current policy. However, this provision does not clearly state that coverage under prior policies for those losses is excluded by the current policy. It is merely a limit of coverage under the current policy.

Id. ¶ 26. Further, as to discovery of loss, the court stated the provision creates a "temporal limit as to when a limit must be discovered"; the provision, however, "does not cause the current policy to exclude coverage under prior policies." Id. ¶¶ 27, 28. "[O]nce a year has passed," however,

the policy coverage expires and can no longer provide any coverage for any losses. Thus, while this provision in the current policy does nothing to limit recovery under prior policies, coverage can be defeated under a prior policy, so long as it contains this provision and losses were not discovered within one year after the end of the respective policy periods.

Id. ¶ 28.

¶29 The Zeller Court's reasoning regarding the next two provisions - prior loss and non-cumulation - are, in our view, the crux of the issue presented in the present case. As to "prior loss," the Zeller Court stated:

This provision specifically limits coverage for an individual loss that is covered under two policy periods. However, as discussed, each policy only covers losses caused by acts that occur inside of the policy period. Any loss attributable to acts that occur solely outside the policy period are automatically excluded under each policy. Thus, this provision cannot apply to an individual loss attributable only to acts inside the policy period of a single policy, as that loss will only be covered by one policy. Instead, this provision applies when acts occurring in two separate policy periods contribute to an individual loss. Under those circumstances, this exclusion would allow the insured to have the benefit of whichever policy provided greater coverage for that individual loss, but not be allowed to claim that loss under two different policies periods.

Id. ¶ 29. The Zeller Court, unlike the courts who considered the meaning of comparable prior loss provisions in Reliance, Wausau and Madison, specifically emphasized the "any loss" language of the provision as applying to an individual loss instead of the "all loss" language defining occurrence. The court further stated:

Notably, this provision does not utilize the term "occurrence." It applies to individual losses, not to an aggregation of losses. Indeed, were this provision to apply when an "occurrence" was partly covered by two policies, then an occurrence would necessarily include losses covered under prior policies. However, as this provision is written, it only applies when a loss spans multiple policy periods. Thus, while this provision limits recovery for an individual loss that spans multiple policy periods, it does not otherwise exclude coverage under prior policies that are attributable to acts that occurred solely during that policy period.

Id. ¶ 30 (emphasis added).

¶30 As to the non-cumulation provision, the Zeller Court observed that unlike other provisions of the insurance policy, "this provision specifically applies to multiple policies. However, it does not operate to exclude coverage under prior policies." Id. (emphasis added). The court stated:

This provision is specifically limited to "this insurance." While "this insurance" is not defined in the policy, when it is used elsewhere it is only in reference to the current policy, not to all policies issued by the insurers. Indeed, the Prior Loss exclusion operates when a loss was covered under "this insurance" and any prior insurance issued by the insurers. Thus, the definition of the term "this insurance" cannot include any prior insurance. As a result, the NonCumulation provision only operates in the event that "this insurance," i.e. the current policy, is extended or otherwise covers multiple years. When each policy period is covered by a different contract for insurance, this exclusion does nothing to limit recovery to a single policy.

Id. (emphasis omitted).

¶31 The Zeller Court also stated that even if it "were to find that this provision affects prior insurance policies, the result would not change. This provision does not allow the limits of insurance to cumulate from year to year or period to period to enlarge the recovery under the current policy." Id. ¶ 32. Relying on the dictionary definition of "cumulate,"[21] the court stated, the

provision prohibits the adding together of the limit of insurance in a different policy to the limit of insurance in the current policy to increase recovery under the current policy. Where separate recoveries are sought from separate policies, the limits of insurance are not added together. Instead, there are multiple recoveries up to the limits of insurance under each policy. This is a cumulation of recoveries, not the cumulation of the limit of insurance. As a result, this exclusion does not limit recovery to a single policy.

Id. 

¶32 Finally, as to the limit of insurance, the court noted this provision does use the word "occurrence." Under this provision, the court reasoned, "[w]hile an occurrence covers 'all loss,' it only includes losses to which the provision otherwise applies." Id. ¶ 33. The court stated, "The limit of insurance is the only way to limit liability for losses that are otherwise covered. Only when the final amount of covered loss has been determined will the limits of insurance apply to determine the extent of the insurance company's liability under the policy." Id.

¶33 The Zeller Court concluded "[t]he policies are clear and unambiguous. Each policy issued by [the insurance company] was a new, separate policy of insurance. While there is no recovery under a policy that ended more than one year before a loss was discovered, no exclusion otherwise limits recovery to a single policy." Id. ¶ 35. The court stressed that "under Ohio law, an exclusion must be clear and unambiguous to defeat coverage. That [the insurance company] had to point to multiple policy provisions in its attempt to prove the exclusion existed, instead of pointing to a provision that clearly states that the current policy excludes coverage under any prior policy, is further evidence that the exclusion is not a part of the policy." Id. ¶ 35 n.7.[22]

 

¶34 Oklahoma decisional law, like that of Ohio, strictly construes exclusions exempting specified risks against the insurer, and "if an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctly reveals its stated purpose." Broom v. Wilson Paving & Excavating, Inc., 2015 OK 19, ¶¶ 25 & 47, 356 P.3d 617 (citations omitted). "In an insurance policy an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed." Dodson v. St. Paul Ins. Co., 1991 OK 24, ¶ 13 n.11, 813 P.2d 372 (citation omitted).

 

[C]onditions and provisions of every contract of insurance will be construed against the insurer who proposes and prepares the policy. If the policy of insurance and provisions in connection therewith are capable of being construed in two ways, that interpretation should be placed upon them which is most favorable to the insured.

Continental Cas. Co. v. Beaty, 1969 OK 89, ¶ 20, 455 P.2d 684 (citation omitted) (to determine whether insured could receive disability benefits under a health and accident policy, the policy condition of notice to the insurer was at issue - i.e., "notice" within a certain number of days after an injury or "notice" within a certain period after establishment of the fact that indemnity payments were due as a result of a prior disabling occurrence).

¶35 At the beginning of the Crime Coverage Form, the policy states: "Various provisions in the policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." (Emphasis added.) The non-cumulation provision and the prior loss provisions are set forth in Section F, titled "General Conditions," which states: "Unless stated otherwise in any Coverage or Optional Coverage in this Crime Coverage Form, the Policy Declarations or an endorsement, the following General Conditions apply to all Coverages and Optional Coverages provided by this Coverage Form[.]" (Emphasis added.) This prefatory language clearly and unambiguously encompasses, among other provisions, coverage for employee dishonesty and "occurrence" as set forth in "this" Crime Coverage Form. Consequently, applying the Zeller Court's reasoning to the policies under review, the prior loss and non-cumulation provisions, among others, do not clearly exclude coverage for an occurrence that occurred in a prior year's policy.

¶36 However, we conclude, unlike the Zeller Court, that an ambiguity is present because the operative provisions of the policies are open to more than one reasonable interpretation. The Oklahoma Supreme Court, in adopting the reasonable expectations doctrine, stated:

Under the doctrine, if the insurer or its agent creates a reasonable expectation of coverage in the insured which is not supported by policy language, the expectation will prevail over the language of the policy. The doctrine does not negate the importance of policy language. Rather, it is justified by the underlying principle that generally the language of the policy will provide the best indication of the parties' reasonable expectations. The standard under the doctrine is a "reasonable expectation"; and courts must examine the policy language objectively to determine whether an insured could reasonably have expected coverage.

Max True, 1996 OK 28, ¶ 8 (footnotes omitted). The Supreme Court recognized the doctrine was "a double-edged sword" because both the insured and the insurer may rely upon their reasonable expectations, id. ¶ 12, and reiterated: that

Generally, absent an ambiguity, insurance contracts are subject to the same rules of construction as other contracts. However, because of their adhesive nature, these contracts are liberally construed to give reasonable effect to all their provisions. Our case law and the interpretive rules applied to insurance contracts demonstrate that Oklahoma law is consistent with the spirit and the policy of the reasonable expectations doctrine.

Id. ¶ 16 (emphasis added) (footnotes omitted). The Court, however, adopted a restricted version of the doctrine and held "the doctrine of reasonable expectations may be applicable to the interpretation of insurance contracts in Oklahoma, and that the doctrine may apply to ambiguous contract language or to exclusions which are masked by technical or obscure language or which are hidden in a policy's provisions." Id. ¶ 24. No argument is made, nor do we conclude, that the operative provisions of the insurance contracts are technical, obscure, or hidden. However, we do conclude there is ambiguity in the language of the insurance contracts.

¶37 While we do not agree with the conclusion reached by those courts who have found no ambiguity in similar contract provisions, we do not find Philadelphia's arguments concerning the non-cumulation provision unreasonable. Philadelphia argues the non-cumulation provision[23] restricts coverage for employee dishonesty to the definition of "occurrence" ("all loss caused by, or involving" an employee "whether the result of a single act or series of acts"); that is, to one occurrence (though the acts occurred over many years) regardless of the number of successive, separate policies the insured has purchased. According to Philadelphia's reasoning, the non-cumulation provision acts to restrict coverage to only the current year's policy and Limits of Liability (e.g., $50,000) and to exclude coverage under prior policies for an occurrence that took place within a prior year's policy period.

¶38 The Zeller Court's comprehensive analysis of multiple provisions of insurance contracts similar to those present here, however, is instructive and persuasive that another interpretation of the policy language - one that does not restrict recovery for an occurrence that occurs in separate policy periods to only one policy period - is also reasonable. Even if Philadelphia meant to limit recovery for occurrence spanning many years and multiple policies, as written the policy language can be reasonably interpreted to limit recovery to the aggregate of losses incurred within one policy period regardless of the number of thefts or dishonest acts by an employee, but does not preclude recovery for an occurrence within a particular policy period, and, thus, does not preclude recovery for an occurrence that also occurs in another policy period, even if the theft or dishonest acts are committed by the same employee. Consequently, because the provisions herein discussed are susceptible to more than one reasonable interpretation, the terms are ambiguous, and are to be construed against Philadelphia, who crafted the contract language, and in favor of First United as a matter of law.

CONCLUSION

¶39 We conclude the trial court did not err as a matter of law in interpreting the polices at issue and granting summary judgment to First United for the limits of liability under the 2011 Policy and 2012 Policy for the series of thefts committed by its employee during each policy period. Accordingly, we affirm.

¶40 AFFIRMED.

THORNBRUGH, P.J., and RAPP, J., concur specially.

RAPP, J., concurring specially, with whom THORNBRUGH, P.J., joins:

The insurance policies here for each year are discrete policies of insurance. Each policy has a specific beginning and termination date; there is not a policy "renewal" or "extension." Each policy has a separate premium from the prior policies and provides that the insurer may change the premium, regardless of whether it actually did so. Each policy contains a different policy identification number. Regardless of whether the relevant policy provisions remained unchanged, that fact does not alter the fact that the 2011 and 2012 insurance policies are discrete, independent policies of insurance.

Therefore, First United had employee dishonesty coverage, subject to policy limits and discovery provisions, separately for each year involved here. First United is entitled to recover for its loss under the 2011 policy, and separately under the 2012 policy.

FOOTNOTES

[1] Thefts also occurred in 2009 and 2010, but those thefts are not part of First United's claims in the present case. According to the auditor's report, the employee issued unauthorized checks payable to herself, her husband, to her personal credit card account, and to various vendors, and she made unauthorized credit card purchases. Philadelphia also conducted an investigation which, like the First United audit, revealed the employee misappropriated $161,445.23 in checks, $6,703.84 in payroll checks, and $31,419.54 in credit card purchases during the period of 2009 through 2012, though it did not review claimed payroll checks or claimed credit card purchases "due to policy limits." However, according to First United, more than $3,000 in misappropriated payroll checks was paid to the employee in 2011. The credit card purchases are not delineated by date of unauthorized use. According to the uncontested calculations of First United, the employee embezzled $48,986.17 in checks and payroll checks in 2011 (not including the unauthorized credit card purchases during 2011) and $78,727.01 in checks and payroll checks in 2012 (not including unauthorized credit card purchases during 2012). Philadelphia does not dispute that at least $1,013.83 ($50,000 minus $48,986.17) in unauthorized credit cards purchases was made by the employee in 2011.

[2] The end of the policy period for each policy is stated as "at 12:01 A.M. Standard Time at [First United's] mailing address[.]" While the complete policies for each of the four policies identified by First United are not part of the record on appeal, Philadelphia does not dispute that each of those policies contains the same operative provisions pertinent to the issues argued below and asserted on appeal. Therefore, we will refer to the policy provisions and pages of the insurance policy upon which Philadelphia relies with the understanding that those provisions are the same as those in the 2011 Policy and 2012 Policy.

[3] Further, the section dealing with employee dishonesty provides: "As respects Employee Dishonesty coverage: 'Occurrence' means all loss caused by, or involving, one or more 'employees,' whether the result of a single act or series of acts."

[4] This "loss sustained" provision is not applicable to the issues presented on appeal.

[5] Paragraph F(10) "Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate" (prior loss provision) provides:

If any loss is covered:
a. Partly by this insurance; and
b. Partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;
The most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

[6] See, e.g., Wynn v. Avemco Ins. Co., 1998 OK 75, ¶ 9, 963 P.2d 572 (citation omitted).

[7] See, e.g., Kirkpatrick v. Allstate Ins. Co., 1993 OK CIV APP 138, ¶ 9, 859 P.2d 532 (citation omitted).

[8] Philadelphia cites PBSJ Corp. v. Fed. Ins. Co., 347 Fed. Appx. 532 (11th Cir. 2009) (per curium) (unpublished); Madison Materials Co., Inc. v. St. Paul Fire & Marine Ins. Co., 523 F.3d 541 (5th Cir. 2008); Wausau Bus. Ins. Co. v. US Motels Mgmt., Inc., 341 F. SupP.2d 1180 (D. Colo. 2004); Shared-Interest Mgmt. Inc. v. CNA Fin. Ins. Grp., 283 A.D.2d 136, 725 N.Y.S.2d 469 (App. Div. 3 2001); Reliance Ins. Co. v. Treasure Coast Travel Agency, Inc., 660 So. 2d 1136 (Fla. Dist. Ct. App. 1995); and Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., Inc., 397 S.E.2d 876 (Va. 1990).

[9] See n.8, supra. In its response to First United's motion for summary judgment, Philadelphia reiterates its citation without explanation to some cases from other jurisdictions it asserts support its position and again relies on Business Interiors for its assertion that "occurrence" means all loss for all years of theft by a single employee. Philadelphia also dismisses First United's reliance on Zeller, "an unpublished opinion from an intermediate Ohio appellate court[.]" We note, in this regard, Philadelphia also relies on an unreported case in support of its argument; that is, PBSJ. However, pursuant to the Federal Rules of Appellate Procedure 32.1(a), PBSJ is citable. See also U.S. Ct. App. 11th Cir. R. 36-2. Unpublished appellate decisions in Ohio also have some measure of precedential value. See, e.g., Bumiller v. Walker, 116 N.E. 797, 800 (Ohio 1917); State v. George, 362 N.E.2d 1223, 1230-33 (Ohio App. 1975); Gustin v. Sun Life Assur. Co. of Canada, 154 F.2d 961, 962 (6th Cir. 1946). In any event, these and other non-Oklahoma Supreme Court decisions upon which the parties rely are no more than persuasive authority in Oklahoma and we consider them as such in this Opinion.

[10] Other courts have observed this limitation of the issue in Business Interiors. See, e.g., Spartan Iron & Metal Corp. v. Liberty Ins. Corp., 6 Fed. Appx. 176 (4th Cir. 2001) (per curiam) (unpublished); Glaser v. Hartford Cas. Ins. Co., 364 F. SupP.2d 529, 537 (D. Md. 2005) (adopting Business Interiors' definition of occurrence for a policy period, but determining definition not instructive where multiple policies are at issue).

One of the cases upon which Philadelphia relies is also factually distinguishable from the present case. Graphic Arts involved a single insurance policy, including crime coverage endorsement coverage, that started August 1, 1983, and ended August 1, 1986, for which a total premium of $2,271 was due but payable August 1 of each year at an annual rate of $757 and renewed August 1, 1986, and expiring August 1, 1987; thus, the court determined total liability was $10,000 under the single policy, not $10,000 for each year the policy was in effect. The court stated: "The insurance contract explicitly limits [plaintiff's] liability to a maximum of $10,000 for the entire coverage period, regardless of the number of years the coverage was in effect. We must interpret the contract as written." 397 S.E.2d at 877. In the present case, the parties executed separate polices in multiple years rather than one policy spanning several years. See also Shared-Interest, 725 N.Y.S.2d at 471-72 (court stated nothing in the record established any "finite 'policy period' . . . [thus] we agree with [the insurer] that what plaintiff would characterize as separate policy periods are simply three-year premium terms, i.e., the time period during which the policy premium is established. In dicta, however, the court stated it was of the opinion that "the unambiguous antistacking provisions [of the policy] [the non-cumulation provision], and particularly [the prior loss provisions], would still preclude the double recovery sought by plaintiff."). Also factually different is another case upon which Philadelphia relies, PBSJ . There the policy at issue was a claims made policy which stated "coverage sections cover only claims first made against the insured during the policy period" and stated "policies shall not cover any loss under the Crime . . . coverage sections not discovered and notified to the Company prior to the inception date of this policy." 347 Fed. Appx. at 534 (emphasis omitted). In this context, the court stated the non-cumulation provision and the limit of liability provision supported a maximum recovery under one policy for the insured. The policies at issue here are not claims made policies.

[11] See footnote discussion n.10, supra.

[12] The operative provisions of the contract terms in Zeller are, for the most part, identical to those at issue here.

[13] We note that Ohio, unlike Oklahoma, has not adopted the reasonable expectations doctrine, though in construing ambiguities in policy language, the courts will consider the reasonable beliefs of the insured. See, e.g., Andersen v. Highland House Co., 757 N.E.2d 329, 333-34 (Ohio 2001). The Zeller Court did not base its decision upon that doctrine nor did it find ambiguity in the contract provisions.

[14] First United argues the operative provisions of the policies are ambiguous. In Oklahoma, if more than one reasonable construction can be placed upon the contract language, an ambiguity arises: "If the language in an insurance contract is deemed ambiguous, this Court applies the reasonable expectations doctrine to determine the intent of the parties and to interpret the terms of the insurance contract." Broom v. Wilson Paving & Excavating, Inc., 2015 OK 19, ¶ 40, 356 P.3d 617 (citing Max True Plastering Co. v. U.S. Fid. & Gaur. Co., 1996 OK 28, ¶ 18, 912 P.2d 861).

[15] The definition of "occurrence" is identical to the definition of the term in the insurance policies involved in the present case as set forth in Section B(1)(e) and previously quoted herein.

[16] The definition of "Policy Period" is identical to the definition of the term in the insurance policies involved in the present case. Section F(14), "Policy Period," provides:

a. The Policy Period is shown in the Common Policy Declarations.

b. Subject to the Loss Sustained During Prior Insurance condition [Section F(9)-(10)], we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

[17] The definition of "discovery of loss" is identical to the definition of the term in the insurance policies involved in the present case set forth in Section F(3) and previously quoted herein.

[18] The definition of "prior loss" is identical to the definition of the term in the insurance policies involved in the present case set forth in Section F(10) and previously quoted herein.

[19] The definition of "non-cumulation" in the present case is set forth in Section F(11) and previously stated herein. It is identical to the definition of the term in Zeller, except that in the present case the provision uses the word "accumulates" not "cumulates."

[20] This provision, set forth in Section C "Limits of Insurance" of the policies under review in this case and previously quoted herein, is different from the provision set forth in Zeller, except that both contain the word "occurrence."

[21] The court noted:

Cumulate is defined as:
1: to gather or pile up into a heap: heap together: accumulate
2a: to combine (as votes, law actions, or penalties) into one, specif.: to combine (the entries of preceding issues) in successive issues (as of an index or catalogue)
b: to enlarge by addition of new material.
Webster's Third New International Dictionary 553 (2002).

Id. {¶ 32}. "Accumulate," the word used in the policies at issue here, is defined as follows: "heap up in a mass: pile up . . . : AMASS . . . : GATHER . . . : to grow or increase in quantity or number . . . ." Webster's Third New International Dictionary Unabridged 13 (2002 Merriam-Webster).

[22] Other courts have also found the similarly defined term "occurrence" is not ambiguous regarding the number or types of theft committed by a single employee. Glaser v. Hartford Cas. Ins. Co., 364 F. SupP.2d 529, 537 (D. Md. 2005) ("[T]he determinative 'question is not whether the employee's various methods of embezzling were related . . . but whether the cause of the loss was related." The court determined "[t]he cause of defendant's loss was the dishonesty of one employee" and, therefore, constituted one occurrence.") (quoting Wausau). As previously discussed herein, the Wausua Court stated "an occurrence is determined by the cause or causes of the resulting injury." 341 F. SupP.2d at 1183 (quoting, among others, Business Interiors).

As to recovery under successive polices, however, the Glaser Court came to a decision different from the Wausau Court and found there was an ambiguity concerning whether an insured, who purchased successive policies, was able to recover under each successive policy year for an employee's acts of embezzlement spanning those policy years. The court reasoned:

However, the [Wausau Court] rejected the analysis of the United States Court of Appeals for the Fourth Circuit in its unpublished opinion in [Spartan] with respect to recovery by an insured during successive policy years. The [Wausau Court] came to a contrary conclusion to that reached by the [Spartan Court] concerning whether the insured was able to recover under each successive policy year for fraudulent acts spanning those policy years.

. . . [We find the] analysis conducted by the [Spartan Court] is instructive and persuasive. [The Spartan Court] found that an identical definition of "occurrence" did not "affirmatively indicate whether a series of acts included acts occurring outside the policy term." In addition, the Fourth Circuit noted that additional policy terms, again virtually identical to those at issue in this case, concerning non-cumulation and the effect of prior insurance coverage did not "ameliorate the ambiguity in the definition of occurrence." [The Spartan Court] noted that the policies spanning two successive policy years were "independent contracts, in that each required a separate single annual premium to be paid[.]" [The insured's] five successive policies required different premiums to account for varied levels of coverage over different property, all of which indicate that each policy was independent. To interpret the successive polices as narrowly as suggested by the [insurer] would essentially render the coverage of successive policies and the payment of premiums meaningless. This Court finds that the same ambiguities identified in [Spartan] are present in the [the insured's] policies, meaning that, pursuant to Maryland law, these ambiguities must be resolved against [the insurer] in favor of [the insured]. Therefore, construing the relevant policy terms, including the occurrence definition, non-cumulation provision, and the effect of prior insurance coverage section, against [the insurer] in favor of [the insured], [the insured] is permitted to recover under each successive policy during which [the employee's] dishonest acts occurred.

Glaser, 364 F. SupP.2d at 537-38 (footnotes omitted) (citations omitted).

[23] Although the cases that have restricted coverage for an occurrence spanning several policy periods have done so largely because of the definition of occurrence and the prior loss provisions not the non-cumulation provisions, e.g., Reliance, 660 So. 2d at 1137-38, Philadelphia has made no argument concerning the prior loss provisions of the policies at issue here. It asserts the occurrence definition and non-cumulation provisions are the crux of the question. That omission from its argument does not affect our conclusions.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1993 OK CIV APP 138, 859 P.2d 532, 64 OBJ 2715, Kirkpatrick v. Allstate Ins. Co.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 24, 812 P.2d 372, 62 OBJ 802, Dodson v. St. Paul Ins. Co.
Cited
 2002 OK 26, 49 P.3d 703, CRANFILL v. AETNA LIFE INS. CO.
Discussed
 1969 OK 89, 455 P.2d 684, CONTINENTAL CASUALTY COMPANY v. BEATY
Discussed
 1996 OK 28, 912 P.2d 861, 67 OBJ 806, Max True Plastering Co. v. U.S. Fidelity and Guar. Co.
Discussed at Length
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 2014 OK 50, 330 P.3d 511, PORTER v. OKLAHOMA FARM BUREAU MUTUAL INSUR. CO.
Discussed
 2014 OK 68, 336 P.3d 457, WOOD v. MERCEDES-BENZ OF OKLAHOMA CITY
Discussed
 2015 OK 19, 356 P.3d 617, BROOM v. WILSON PAVING & EXCAVATING, INC.
Discussed at Length
 2015 OK 82, 364 P.3d 637, SERRA v. PERSONAL REPRESENTATIVE OF ESTATE OF BROUGHTON
Discussed
 1998 OK 75, 963 P.2d 572, 69 OBJ 2620, Wynn v. Avemco Insurance Co.
Discussed